**CITY OF DALLAS v. ROFFMAN et al.**
**(No. 8652.)**

(Court of Civil Appeals of Texas. Dallas.
June 11, 1921. Rehearing Denied Oct.
15, 1921.)

**1. Eminent domain ☞275(1)—Remedy against city for the manner of work in opening street held in damages, and not by injunction.**

Where a city acquired right to open street through plaintiff's lands by purchase, the opening of the street and construction thereof on grade was the performance of a governmental function, and plaintiff's remedy for the manner in which the city was excavating, blasting, and undermining the street, injuring his adjoining property, was by action for damages, which was adequate, and he was not entitled to injunction.

**2. Easements ☞18(1)—Nature of way of necessity stated.**

Way of necessity can exist only as an implied easement over property owned in the sense of private ownership and adjacent to that to which is appurtenant a right to a way in and out, and it is a way implied where a person sells another land so surrounded by other lands as to be inaccessible except by passing over such grantor's land, and can only be raised out of land granted or reserved by the grantor, but not out of lands of a stranger. (Citing 8 Words and Phrases, p. 7418.)

**3 Eminent domain ☞92 — Not involved by mode of opening street on a right of way already acquired by the city.**

The provision of Const. art. 1, § 17, requiring adequate compensation before taking property was not involved where the city had already acquired a right by contract with plaintiff to open a street across his land, but was pursuing the work in a manner which he alleged damaged his adjoining property.

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Suit by A. Roffman and others against the City of Dallas. Judgment for plaintiffs granting temporary injunction, and defendant appeals. Reversed, and injunction dissolved.

J. J. Collins, Allen Charlton, and Earl C. Callaway, all of Dallas, for appellant.
Pope & Young, of Dallas, for appellees.

HAMILTON, J. Some time prior to April 27, 1918, the city of Dallas, having determined to change the course of Maple avenue, one of its thoroughfares, was confronted with the necessity, in executing its purpose, of extending the proposed construction of Maple avenue through a parcel of land owned by appellees. Negotiations for the acquisition of a right of way through the property were begun and finally terminated in a written contract between the parties dated April 27, 1918, and duly acknowledged by appellees. The material parts of the agreement are copied as follows:

"This agreement between the city of Dallas, acting by and through its mayor, Joe E. Lawthere, and A. Roffman and his wife, Sarah Roffman, of the county and city of Dallas, witnesseth: That whereas, the city of Dallas has relocated Maple avenue by ordinance duly passed, and, as now relocated, Maple avenue will cross the property of said A. Roffman and wife, Sarah Roffman, as per the map of said relocation now on file in the office of the city engineer of Dallas, which map is here now referred to and made a part hereof, for full description of said street as relocated, and the land of said A. Roffman and wife, Sarah Roffman, over which said street will cross, and that will be taken by said street as relocated; and

"Whereas, in relocating said street the city of Dallas acknowledges that it will be liable to said A. Roffman and wife for the value of said land to be taken and used by it as a part of said roadbed, and also will be liable to said A. Roffman and wife for damages to the balance of said tract of land through which said street is opened and for damages to the improvements located on said land:

"It is therefore mutually agreed by and between all parties hereto, and for the purpose of agreeing upon the price of said land so taken for said street and the damages to said balance of said land and improvements thereon, and all of which is hereby agreed to, that the city of Dallas will pay to said A. Roffman and wife, Sarah Roffman, the sum of ten thousand ($10,000.00) dollars in cash, and will convey all right, title, and interest the city owns in that portion of Maple avenue as designated on the blueprint hereto attached and made a part hereof by the letters C, D, and F, and will also build sidewalks and curbs without cost to the said A. Roffman and wife upon and over the street Maple avenue, as relocated and as will be built over the property of said A. Roffman and wife.

"In consideration of which said A. Roffman and wife, Sarah Roffman, agree and bind themselves to convey by warranty deed unto the city of Dallas all that certain portion and part of their said land over which Maple avenue will be relocated and as designated and marked upon the map of said new route now on file in the engineer's office of the city of Dallas, and as designated on the blueprint hereto attached by the letter A; and the said A. Roffman and wife, Sarah Roffman, further agree to convey by warranty deed to the city of Dallas that certain piece and parcel of land designated on the blueprint attached by the letter B; and the said A. Roffman and wife, Sarah Roffman, also further agree to convey all right, title, and interest that they may have in Maple avenue as designated upon the blueprint hereto attached by the letter E, and also agree and bind themselves, in consideration of the above sum of money and conveyances, to accept same in full settlement and satisfaction of all damages of any nature and description to which said tract of land and improvements thereupon that may be occasioned by the opening up and establish-

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ment of Maple avenue over and across their said land, and in full payment and settlement of the land to be taken by the city for the roadbed and use of Maple avenue.

"It is further agreed that the city of Dallas and its agents may at once begin the opening up of Maple avenue over and across the land owned by A. Roffman and wife, referred to above, and build said street across said land, as per and in keeping with the plans and specifications of said relocation of Maple avenue now on file in the engineer's office of the city of Dallas, referred to above.

"It is further agreed that upon the execution and delivery to the city by the said A. Roffman and wife of the deeds referred to above, and proper release of all damages referred to above, and deeds to the tracts of land referred to above, that the city of Dallas will pay unto the said A. Roffman and wife said sum of ten thousand ($10,000.00) dollars in cash, and execute conveyances to the lands agreed to be conveyed by the city to said A. Roffman and wife. To properly execute said conveyances it will be necessary to pass an ordinance to that effect, which the city agrees to do.

"This contract is executed in duplicate, each to be an original. This agreement and the sum to be paid and conveyances to be made by the city will be accepted by said A. Roffman and wife, Sarah Roffman, in full satisfaction, payment, and settlement of all differences between the said A. Roffman and wife, Sarah Roffman, and the city of Dallas, for all damages sustained in relocating said Maple avenue over the property of said A. Roffman and wife by the city of Dallas, and in full payment for said land to be taken for said street by the city of Dallas."

The written agreement having been executed as above indicated, appellant entered upon the undertaking of opening the street, and after the work thereon had progressed to the point of excavating the street adjacent to a certain brick building owned by appellees they began to oppose further operations because of alleged encroachments upon and injuries to their property. The street was cut out much lower than the adjoining property, and, the formation being rock, blasting was the process by which the excavating in that particular vicinity was done.

In March, 1919, appellees asked and obtained in the trial court a temporary injunction restraining appellant and others from the work of blasting, alleging that by it the adjoining land belonging to them was being undermined and infringed upon.

In April of the same year appellees obtained a further restraining order upon allegations that appellant had lowered the street grades of Maple avenue and Fairmount street, which run parallel to each other, the one on the east side of the block of land on which appellees' brick building stands and the other east of it, and had caused the grade of the Missouri, Kansas & Texas Railway extending alongside it to be cut down correspondingly, and also alleging that appellant had acquired title to and owned all the land comprised in the block on which appellees' building is situated other than that owned by appellees, and that appellant was engaged in lowering the surface of all such land owned by it in the block so as to make it conform to the street grade, and that the result of all that had been done by appellant in cutting Maple avenue through the territory acquired from appellees and in cutting down the grade of Fairmount street and of the railway together with the contemplated work of reducing the surface of the land adjoining appellees' property would leave appellees' building on a pinnacle high above the streets and adjoining property, and with no practical way of egress and ingress.

Upon allegations of the nature stated appellant was temporarily enjoined from "excavating, blasting, undermining, or lowering the street grade or level in said area bounded by said Katy Railway, Maple and Fairmount streets, and adjacent to plaintiffs' said property, either in the front or side thereof, or in said area between Maple and Fairmount streets," etc.

We do not think the facts recited in the petition allege an injury of a nature which authorizes restraint by injunction. The opening of Maple avenue and its construction upon the grade given it was the performance of a governmental function in accordance and in consonance with the authority possessed by the city. This power, so far as the record discloses, was exercised regularly and in the manner prescribed by law, for the good and convenience of the public. The judgment and discretion of the proper municipal officials having lawfully determined the construction of the street on a certain plan, and the steps taken in carrying out that plan being conceded to be lawfully pursued and regular, the right to question the legality of the street construction itself, as laid out and pursued, is foreclosed. The same may be said of changing the grade of Fairmount street and of the railroad. (The city had contracted with the railroad company to assume all liability to property owners for damages occasioned by the change of its road grade.) And the petition alleges no facts which constitute a challenge of the legality of the building of Maple avenue upon the grade to which it is constructed nor of the change of grade in Fairmount street and the railroad. But, while in effect conceding the acts of the city in fixing the grades, as they are, to be lawful and authorized, appellees say that the effect of these acts is to leave their building inaccessible from any street, and that the city is cutting down the adjoining land which it owns so as to conform it to the street grade, thereby leaving

the place owned by appellees high above all adjacent surface, with the walls of the building thereon already undermined and destroyed by the work of excavating, and allege the effect of all of this to be a practical taking of their property without the compensation guaranteed by the Constitution of Texas.

Not only do appellees omit allegations of any facts in denial of the legality of the course pursued in building Maple avenue on the grade called for and reconstructing Fairmount street and the railroad on the grades given them, but specially plead the contract between the parties, as above copied, and also the blueprint, itself a part of the contract; and this blueprint, made a part of the petition, indicates all the work to be done on all the thoroughfares in the manner and to the extent, it seems, that it is being done, except as to the encroachments upon appellees' land as a result of excavating, which encroachments had already been enjoined. The work on the streets complained about is thus shown to have been in the contemplation of the parties when the contract was made.

[1] It has been decided in this state that a landowner may enjoin the opening of a road through his premises after the land has been condemned and the road ordered opened by a procedure not in conformity with the express provisions of law. Hopkins v. Cravey, 85 Tex. 189, 19 S. W. 1067. It is also settled that the opening of a road by condemnation may be enjoined until compensation is paid the owner of the land. This is under the view that compliance with the condition of paying or tendering the damage as required in article 1, § 17, of the Constitution is necessary to the validity of "taking" property in the exercise of eminent domain. Railway Co. v. Baudat, 18 Tex. Civ. App. 595, 45 S. W. 939. But we know of no decision recognizing the right to invoke such relief under the facts of this case, or similar facts, and we think the rules which govern equity jurisdiction very clearly deny such right. Here the right to open the street was settled by the contract. The situation with reference to the right to enjoin appellant is the same as would exist in case of changing the grade of a long-established street owned by the city.

In our opinion the injunction ought not to have issued for the elementary reason that, conceding the petition to state an injury to appellees, a complete, plain, and sufficient remedy at law exists. Whatever right of action may arise out of the situation depicted in the petition is one for damage to property then inflicted and being inflicted by the work of grading a street already lawfully acquired by the city. The right to do the things complained about is, as said, not questioned; complaint is made only that the manner of doing them has resulted or will result in the practical destruction of appellees' property. No more nearly proper method of doing the work is pointed out. Appellant in the exercise of its lawful and rightful power as a government had determined that the end sought and the method pursued were correct and necessary. Appellees had agreed and acquiesced in all this by making the contract quoted. The injury is of a nature which renders it certain of definite ascertainment and determination so as to be adequately compensated in damages. City Commissioners of Port Arthur City v. Fant, 193 S. W. 343. We express no opinion as to the effect of the above-quoted contract upon appellees' right to assert and recover damages.

To sustain the injunction appellees contend that the injury will be irreparable even though it may not be beyond the possibility of compensation in damages. That an injury may be irreparable in the sense that no fair and reasonable redress is available in a court of law, even though it possibly might be satisfied by money compensation, is conceded. But the applicability of that rule in a proper case in no way conflicts with or impairs the further rule, perfectly applicable here, that a court of equity will not extend relief by injunction in a case where the law affords a plain, full, complete, and adequate remedy for an injury of the kind alleged, committed under the circumstances revealed in this case.

[2] Appellees contend that the injunction was proper in respect to at least a portion of their land because it was acquired by them from appellant, the latter retaining other land over which alone access to appellees' land can be had, and that under the common law a way of necessity is implied.

This contention is not presented in appellees' petition, and accordingly it ought not to be considered. The prayer of the petition calls for restraint of the work "of excavating, blasting, undermining, or lowering the street grade or level" and from trespassing upon appellees' property. It calls for no other relief. The order entered conforms strictly to the prayer. Furthermore, our attention is called to no proof raising any issue as to a way of necessity. The law of "way of necessity" is a derivative of the law of easement. Way of necessity can exist only as an implied easement over property owned in the sense of private ownership and adjacent to that to which is appurtenant the right to a way in and out.

"A way of necessity is one implied where a person sells another land so surrounded by other lands as to be inaccessible except by passing over such grantor's land and can only be raised out of land granted or reserved by

the grantor, but not out of lands of a stranger." 8 Words and Phrases, p. 7418; Ellis v. Bassett, 128 Ind. 118, 27 N. E. 344, 25 Am. St. Rep. 421.

As we understand the record, none of appellees' land is excluded from access to a public thoroughfare so as to require passage over some other person's land.

[3] The case as presented, we think, contains only the ultimate question of the respective rights of the city and the Roffmans in relation to change of the grade of a street upon which the latter's property abuts. A city in the exercise of the power of eminent domain must conform to the provisions of section 17, art. 1, of the Constitution before taking and exercising control over property; that is, adequate compensation must be made, and such compensation must first be paid or secured by a deposit of money, before the property is taken, except that the person affected consent and waive such requirements. Article 1, § 17, Constitution of Texas. But there is here an absence of the exercise of the right of eminent domain. No attempt is made to disturb appellees' title to any property. The city, in reducing the grade of a street to which it already has acquired a right by contract with appellees, is alleged to be inflicting damage upon abutting property owned by them. The measure of such damage is clear, and under facts properly pleaded and established showing the damage, the law supplies full relief. In such instances as peculiarly presented by the case before us the relief granted in this state as well as in others where the Constitutions, like ours, provide that private property, etc., "shall not be taken, damaged or destroyed for public use without just compensation," has been, not by injunction, but in damages. City of Port Arthur City v. Fant, supra; Texarkana v. Talbot, 26 S. W. 457; Dallas v. Kahn, 9 Tex. Civ. App. 19, 29 S. W. 98; Smith's Modern Law of Municipal Corporations, vol. 2, §§ 1220–1228; Ballard's Law of Real Property, vol. 10, § 10; 37 Cyc. 236–243; Abbott on Municipal Corporations, vol. 2, p. 1929 et seq.

The petition does not call for any relief against the work of appellant upon the lots owned by it adjacent to appellees' property. But, if it did, we are not prepared to say the work of reducing the lots to the street grade could be enjoined unless possibly the work were to be done in such way as to leave appellees' land without lateral support. At least the injunction granted does not pertain to anything except street excavation, and the case presented in the petition, we think, did not warrant such relief.

Accordingly the judgment is reversed, and the temporary injunction is dissolved.

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes