TEXAS & N. O. R. CO. v. ORANGE COUNTY et al. (No. 311.)

(Court of Civil Appeals of Texas. Beaumont. June 18, 1918. Rehearing Denied Nov. 27, 1918.)

1. ADVERSE POSSESSION ⚖══60(2)—PERMISSIVE POSSESSION.

Mere permissive possession of land, however long continued, will not give title by adverse possession.

2. RAILROADS ⚖══69 — GRANT FROM COUNTY — CONSTITUTION.

Instrument by presiding justice of county court reading, "I, ———, donate, grant, and convey" certain land to railroad for use as depot site, construed with county court's order using words "grant" and "donate," was intended to pass title, and not merely permissive possession, where only word of limitation declared grant void upon railroad's failure to build line through certain town.

3. DEEDS ⚖══93—CONSTRUCTION—INTENT.

A deed should be construed according to its apparent intent as gathered from the entire instrument, in the absence of ambiguity on the face of the instrument.

4. DEEDS ⚖══90 — CONSTRUCTION AGAINST GRANTOR.

In case of ambiguity in a deed, or where it admits of two constructions, it will be construed most strongly against the grantor.

5. DEEDS ⚖══101 — CONSTRUCTION — CONDUCT OF PARTIES.

Where parties to instrument in writing have by their acts and conduct placed a construction upon the same showing the intention of the parties, such acts and conduct should be given strong weight by the courts in arriving at the intention of the parties, and, in the absence of clear language indicating intention inconsistent with acts and conduct, the courts should adopt

the construction placed upon instrument by parties themselves.

6. RAILROADS ⚖══69—GRANT—CONSTRUCTION.

Where county granted land to railroad, and for more than 40 years permitted railroad to use land and pay all taxes thereon, the county will be held to have intended.to grant land to railroad absolutely, and not merely to give permissive right to use same as site for depot.

7. ADVERSE POSSESSION ⚖══73 — DEFECTIVE GRANT—OCCUPATION OF LAND BY OWNER.

Where county granted land to railroad for depot purposes, but failed to sell land by commissioner at public auction as required by law, the railroad, by entering upon land, making improvements thereon, and continuing possession and paying taxes for more than 40 years, secured title thereto by adverse possession.

Appeal from District Court, Orange County; W. R. Blackshear, Judge.

Action by Orange County and others against the Texas & New Orleans Railroad Company. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

Orgain, Butler & Bolinger, of Beaumont, and Baker, Botts, Parker & Garwood, of Houston, for appellant.

J. T. Adams and Holland & Holland, all of Orange, for appellees.

HIGHTOWER, C. J. The nature and result of this suit is found to be correctly stated in appellant's brief, as follows:

This suit was filed by Orange county, and D. C. Bland, county judge, J. P. Eddleman, Will Linscomb, Steve Cleveland, and Jesse Turner, county commissioners of Orange county, suing in their official capacity as such, against the Texas & New Orleans Railroad Company, in the form of trespass to try title to recover of the appellant, defendant below, Texas & New Orleans Railroad Company, a certain small parcel of land fully described in plaintiffs' petition.

The railroad company answered by general demurrer, general denial, plea of not guilty, and also pleaded specially the three, five, and ten years statutes of limitation in support of its claim to said land in fee simple, and also interposed the three, five, and ten years statutes of limitation in support of its claim of an easement to the property in controversy.

Defendant also set up, by proper pleading, valuable improvements made in good faith, to the extent of $20,000; and, by way of cross-action, defendant asserted title as against the plaintiffs to said property in fee simple, and also, in the alternative, that it owned an easement or conditional fee title in said land and premises under the three, five, and ten years statutes of limitation. Defendant also asserted that plaintiffs' cause of action, if any, was barred by laches and stale demand.

A trial was before the court without a jury, and judgment was rendered in favor of the plaintiffs for the land sued for, and denying defendant's claim of title on its cross-

action, as well as the value of the improvements made in good faith. From this adverse judgment the defendant, Texas & New Orleans Railroad Company, properly perfected its appeal to this court, and the judgment is now properly before this court for revision.

The first assignment of error found in appellant's brief complains, substantially, of the action of the trial court in refusing to sustain appellant's defense of stale demand; but we shall not discuss this assignment, and will proceed to dispose of the second and third assignments of error, which raise substantially the same question. The second assignment of error is as follows:

"The court erred to the prejudice of the defendant in rendering judgment in favor of plaintiffs for the land in controversy, because it was shown by the uncontradicted testimony adduced upon the trial that defendant, claiming to have good and perfect title to the land described in its answer herein, has had peaceable, continuous, and adverse possession of said land, being the same land claimed in plaintiffs' petition, using and enjoying same for a period of more than ten years after plaintiffs' cause of action accrued, if any, and before the commencement of this suit, and that, therefore, defendant was vested with title to the land in controversy under and by virtue of the ten years' statute of limitation of the state of Texas, and that plaintiffs were, therefore, without title to the land sued for."

The third assignment of error complains of the action of the trial court in refusing to render judgment in favor of the defendant, for the reason, as claimed in the assignment, that the great weight and overwhelming preponderance of the testimony adduced upon the trial showed that the defendant had acquired title to the land in controversy under the statute of ten years limitation interposed by it.

After the trial court had overruled appellant's motion for new trial, said court, at the request of appellant, filed its findings of fact and conclusions of law, as follows:

"(1) Plaintiffs and defendant claim the land through and under a common source of title.

"(2) The land in controversy was patented to Nathan Cordrey by the republic of Texas on December 11, 1841, who died without conveying the same, and his legal heirs surviving him, at the time of his death, executed and delivered to the county commissioners of the county of Orange a deed of March 16, 1857, which was duly acknowledged and recorded on March 18, 1857, wherein, in consideration of one dollar, the grantors bargained, sold, donated, granted, and conveyed unto the county commissioners of the county of Orange, and their successors in office, for the use and benefit of the county, and the public use of all persons whomsoever, lawfully to use and enjoy the property sued for.

"(3) On February 5, 1876, H. D. Sells, presiding justice of Orange county, delivered to defendant railroad company a written instrument in which it is recited that the commissioners' court of Orange county entered an order, and that in obedience to such order he executed such instrument; said order is copied in said instrument, and by the terms of such order the defendant company is granted the land sued for, which is recited to be a portion of the public landing on the river acquired by the county commissioners under deed made to them by Cordrey, and the grant is for the purpose of building and erecting thereon the necessary buildings, etc., for use of said company, and to be under their control, and for their exclusive benefit. This instrument was recorded in the deed records of Orange county, Texas, February 24, 1876.

"(4) Defendant railroad company went into possession of the land sued for about March 1, 1877, going into possession under and by virtue of the written instrument given to said company by Sells, presiding justice, acting under an order of the commissioners' court of Orange county, Texas, and since said time defendant company, holding under such instrument, has had possession of said property, maintaining thereon a depot and warehouse, and said depot and warehouse is at present located on said land. Repairs, improvements, and additions to said depot were made by the defendant from time to time as its business made it necessary.

"(5) After entering into possession of said land under said instrument, defendant rendered for taxes depot property and wharf property, which I find to be the property in this suit, and paid the taxes thereon continuously for a long number of years as the same became due; and I find that, under such character of rendition, taxes were paid as same became due for each and every year for the years 1877 to 1916, inclusive.

"(6) I find that the defendant claimed the land in controversy from and after its entry thereon in fee simple from and after March 1, 1877, but said claim was never made known to the plaintiff.

"(7) I further find that the character of possession of the defendant under the instrument under which it held was not notice of any adverse claim on the part of the defendant, but was in accordance with the right and privileges granted it under said instrument.

"(8) I find that defendant has strictly complied with all the requirements of the five years statute of limitation of the state of Texas prior to July 4, 1887, and that defendant would be vested with title to the land in controversy under and by virtue of said five years statute of limitation if limitation would run in favor of defendant as against plaintiff for the land in controversy under the instrument by virtue of which the defendant entered on and claimed the land. I find that defendant has strictly complied with all the requirements of the ten year statute of limitation of the state of Texas prior to July 4, 1887, and that defendant would be vested with title to the land in controversy under and by virtue of said ten year statute of limitation if limitation would run in favor of defendant as against plaintiff to the land in controversy under the instrument by virtue of which the defendant entered on and claimed the land.

"Conclusions of Law: Under my construction of the instrument referred to under which the parties respectively claim the land sued for, the written instrument dated February 5, 1876, under which defendant entered on the land in controversy, conferred on defendant no greater right than that of a permissive use of the property in controversy, revocable at the will of the plaintiffs herein, and constituted defendant merely the tenant at will of the plaintiffs; and I therefore conclude that, as a matter of law, defendant is precluded from asserting as against plaintiff the defense of the five and ten years statute of limitation of the state of Texas, and that plaintiffs are entitled to a judgment for the land sued for, and judgment is rendered accordingly.
"W. R. Blackshear, Judge Presiding."

Thus it is manifest from the trial court's findings of fact and conclusions of law that appellant's claim of title to the land in controversy, based upon the statute of ten years limitation, was denied solely upon the theory of the trial court that the deed or instrument

from H. D. Sells, as presiding justice of Orange county, was not a conveyance or intended to be a conveyance of the land in controversy to appellant, but, on the contrary, that such instrument or deed had no other effect than to make appellant a tenant at will of Orange county, and created in appellant nothing more than a permissive use of the land therein mentioned, revocable at the will and pleasure of Orange county at any time.

If the trial court's construction of said deed or instrument was correct, then, of course, this court would find no difficulty whatever in concluding that the trial court was correct in holding that appellant could not acquire title to the land in controversy under either of the statutes of limitation of this state; but after a careful consideration and analysis of the instrument or deed from Sells, as presiding justice, to appellant, we have reached the conclusion that the trial court was in error in concluding that the same was not intended as a conveyance of the land in controversy to appellant, and that the only effect of this instrument was to create appellant a tenant at will of Orange county, and gave to appellant only the permissive use of this land for depot purposes, so long as Orange county might be pleased to permit such use.

The deed or instrument from H. D. Sells, presiding justice of Orange county, to the Texas & New Orleans Railroad Company, appellant, dated February 6, 1876, reads as follows, to wit:

"The State of Texas, Orange County.

"Whereas the county court of said county in special session on this the 5th day of February, A. D. 1876, made and entered of record the following order, viz.: 'It is ordered by the court that the portion of the public landing on the Sabine river between fractional block No. 1 and fractional block No. 2, in the upper survey of the town of Orange, granted and conveyed to the county commissioners of Orange county and their successors in office by Drucilla Cordray and Wm. H. Cordray by deed of 16th March, 1857, and recorded in Book B, Records of Deeds, pages 286 and 287, viz.: [Here follows description of the land in controversy by metes and bounds,] be, and the same is hereby, donated and granted to the Texas & New Orleans Railroad Company of 1874 for the purpose of building and erecting thereon the necessary buildings, etc., for the use of said company, and to be under their control and for their exclusive benefit; provided, however, should said railroad company or their successors fail to complete and permanently operate said railroad through the town of Orange within a reasonable time, or at any time cease to so operate the same, then this grant shall become null and void, and said property, with any improvements thereon, is to revert to and vest again in the said county of Orange. And it is further ordered that the presiding justice be authorized and directed to make to said company the proper transfer for the said described property.' Know, therefore, all men by these presents, that I, H. D. Sells, presiding justice of the county court of Orange county, in compliance with said order of the county court made and entered of record as aforesaid, do by these presents donate, grant, and convey unto the Texas & New Orleans Railroad Company of 1874 said before described premises, with all the rights and privileges there-

to belonging (reserving to the county of Orange the rights in said order specified), to have and to hold unto said company and for their own exclusive use and benefit. In testimony of which I hereto sign my name officially at Orange, Texas, on this 5th day of February, A. D. 1876.

"H. D. Sells,
"Pres. Justice, Orange Co., Texas."

The certificate of acknowledgment was as follows:

"The State of Texas, Orange County.

"On this the 5th day of February, A. D. 1876, before me, R. H. Smith, clerk of the district court of said county, personally came H. D. Sells, presiding justice of the county court of Orange county, to me well known, and acknowledged to me that he signed and executed the above and foregoing transfer for the uses and purposes therein contained and expressed.

"Given under my hand and seal of office at Orange, on this day and date above written.

"[L. S.]        R. H. Smith,
"Dist. Clk., O. Co."

This instrument was filed for record February 24, 1876, and was duly recorded.

Before discussing the character and effect of the above-mentioned instrument from the presiding justice of Orange county to the Texas & New Orleans Railroad Company, we might say that it is not contended by appellant that the same had the effect of passing the title of Orange county in the land in controversy to appellant; in other words, it is not appellant's contention that said instrument was a title-passing one, but, on the contrary, it is conceded by appellant that said instrument, whatever may have been the intention and purpose of its execution, did not have the effect to pass the title to the land in controversy to the railroad company, for the reason that the statute in effect at the time of its execution, providing how the county's land might be conveyed, was not complied with, and that, therefore, no title passed to the railroad company by virtue of the instrument. It seems that, prior to the adoption of our Constitution of 1876, county courts and commissioners' courts in this state were composed of justices of the peace, and these justices transacted all business of both the county and commissioners' court. Acts 12th Legislature, p. 87, approved August 13, 1870.

The justice of the peace who resided at the county seat was called the presiding justice, and H. D. Sells, who executed the instrument hereinbefore mentioned, was presiding justice of Orange county at the time of the execution by him of such instrument. The law of this state provided at that time the method by which a county might convey its land, which was by an order entered on the minutes of the court appointing a commissioner to sell the land of the county at public auction. In this instance no order of the county court of Orange county was made or entered appointing a commissioner to sell the land in controversy to appellant, but, as shown by the instrument itself, the said Sells, as presiding justice, acting under authority of an order of the county court of Orange

county, undertook to convey to appellant whatever title or interest it acquired under said instrument.

The claim of title under the statutes of limitation as interposed by appellant in this case, however, is not dependent upon the validity of the act of said presiding justice of Orange county in attempting to convey to appellant the land in controversy, and we do not understand that the appellees contend otherwise; but the main and real contention made by appellees is that it was not intended by the execution of said instrument or order of the county court of Orange county to convey the land in controversy to appellant, but that it was only intended, and that said instrument had only the effect, to create appellant the tenant at will of Orange county, and that, at the most, appellant acquired under said instrument only the permissive use of said land, to continue so long as the county might not determine otherwise, and that such purpose and intention is clearly manifest from the instrument itself; and that, therefore, appellant could not acquire title under any statute of limitation to the land in controversy, regardless of the length of time that appellant might remain in possession of said land, claiming and occupying the same under such instrument.

[1] That a mere permissive possession of land, however long continued, will not give title by adverse possession, is a proposition of law so well settled in this state that no citation of authority is necessary in its support, and the proposition is not denied by appellant here.

The real question for determination, and which is decisive of this case, is, What did the grantor in this instrument intend to grant and convey to the railroad company at the time of its execution? We readily concede and agree with appellee that the instrument, whatever it may be termed, executed by Sells as presiding justice, must be read and construed in the light of, and as a part of, and we might say limited by, the order of the county court of Orange county, which is expressly mentioned in the instrument executed by the said presiding justice. It will be observed that the expressions "grant" and "donate" are used in the order of the county court, and that the words "donate," "grant," and "convey" are used in the instrument executed by the presiding justice upon the authority of said order.

As clearly showing the position and contention of appellee that it was not intended by the instrument in question to convey to the railroad company any portion of the land in controversy, but only to grant to it the use of the same for depot purposes, and that such use was to continue only so long as the county might see proper to permit, we quote from remarks of appellee's counsel, as follows:

"Taking into consideration the history of the times at the time this instrument was had and obtained, and as established by the record herein: The town of Orange was without a railroad: the T. & N. O. was building in its direction. No doubt the county of Orange wanted a railroad, and it and her people were ready and willing to make any sacrifice for the obtention of one. The land in this suit, by reason of its close proximity to the then business portion of Orange, its location upon a navigable stream, was particularly attractive to the owners and managers of the railroad, as a proper site upon which to erect its depot and other necessary buildings. The justices of the peace of the county of Orange, who were then vested with the control and management of the property as trustees for the county, were as willing, no doubt, to offer the site, as the railroad company was to receive it. Presumed to know the law and their duties controlling their action, it was apparent that they could not sell it, except by an order of court appointing a commissioner to sell, and then only to the highest bidder. Confronted with this situation, what should be determined was the intention in the use of the words 'donate' and 'grant' in the order. Standing alone, they might be construed to mean what they usually import, and, law or no law to the contrary, the justices were determined to give the property to the railroad company, but immediately followed by the further words, 'for the purpose of erecting thereon the necessary buildings, etc., for the use of said company,' and with the further words, 'to be under their exclusive control and management,' clearly indicates that their intention was that the railroad company had their permission to enter upon the property and erect just such necessary buildings as they might desire, and the words 'donate' and 'grant' were used in that sense. If this was not true, then the words limiting the control and management of the buildings, etc., to the railroad company exclusive of all others, would be idle and foolish; likewise the specifying of the purpose of the donation to be for the erection thereon of the necessary buildings, etc., for the use of said company."

It is earnestly contended by counsel for appellee, by way of argument, that since it is expressed in the instrument in question that the railroad company was to have the land "for the purpose of erecting thereon the necessary buildings, etc., for the use of said company, and to be under their exclusive control and management," such language of itself clearly indicates that the intention of the grantor was that the railroad company had permission to enter upon said property and erect such necessary buildings as it might desire, and that the words "donate" and "grant," found in the order of the court, and the words "donate," "grant," and "convey," used in the instrument executed by the presiding justice, should be and must be construed to mean that the land was not intended to be conveyed to the railroad company in any sense, but that the railroad company was merely donated and granted the use of the same for the purpose only of erecting its necessary buildings for depot purposes, and, when erected, to use the same exclusively for such purposes, and exclusive of the use of the same by all others for any purpose, so long only as Orange county might be willing to permit such use.

[2] We cannot agree with this contention of appellee's counsel, for we do not construe

the language used in the instrument and just referred to as constituting any limitation on the right of the railroad company to said land. It is true that it is manifest from the whole instrument that it was intended that the railroad company was to have the land for depot purposes, etc., and, as said by counsel for appellee, the purpose in executing such instrument was to induce the railroad company to build its railroad through the town of Orange, and to locate its depot there; and it was intended by all parties, beyond question, that the railroad company was acquiring the land for the purpose of building thereon its depot, and necessary buildings in connection therewith, in the town of Orange; and that the railroad company's agreement and promise to build its line into the town of Orange and locate its depot there was the real consideration that moved Orange county to grant to it the land in controversy; and the mere fact that it is clearly expressed in the order of the court of Orange county, and in the conveyance from the presiding justice, that the land thereby granted was to be used for depot purposes, and to be under the exclusive control and management of the railroad company, should not, in our opinion, be construed as any limitation whatever upon the interest in the land that passed by said instrument, or was intended to pass by said instrument, to the railroad company. The only words of limitation found in the instrument executed by the presiding justice are in the order of the county court itself, as we construe the same, as follows:

"Provided, however, should said railroad company, or their successors, fail to complete and permanently operate said railroad through the town of Orange within a reasonable time, or at any time cease to so operate the same, then this said grant shall become null and void, and said property, with any improvements thereof, is to revert to, and vest again in, the said county of Orange."

[3] It is shown beyond all question that the railroad company completed its line through the town of Orange within a reasonable time after the instrument in question was executed, and that said railroad has been continuously operated through the town of Orange ever since, and there was no contention on the trial that the proviso above referred to had not been complied with in every respect. We understand it to be the rule in this state, as announced by innumerable decisions of our appellate courts, that a deed should be construed according to its apparent intent, as gathered from the entire instrument, in the absence of ambiguity on the face of the instrument; and taking into consideration the entire instrument executed by H. D. Sells as presiding justice, covering the land in controversy in this case, and under which appellant has claimed this land for more than 40 years, and construing the same in connection with the order of the county court authorizing its execution, we have arrived at the conclusion that the intention on the part of the grantors was to grant and convey to the railroad company the land therein described for depot and station purposes in the town of Orange, in consideration of the railroad's promise to construct its line through said town and establish its depot there, and to continue the operation, etc., of such railroad; and, since it is undisputed that the railroad company did, in accordance with its promise, construct its line through said town of Orange, and did comply in every respect with its contract with Orange county, and has continued to so comply, it is unnecessary for us to determine or discuss the effect of the recitation in the conveyance providing that a "failure on the part of the railroad to complete and permanently operate said railroad through the town of Orange within a reasonable time, or at any time cease to operate the same, then this said grant shall become null and void, and said property, with any improvements thereon, is to revert to, and vest again in, the county of Orange."

[4] But if we should be mistaken in our conclusion that it is apparent from the instrument in question, construed as a whole, that it was the intention to convey to the railroad company the land in question, and that there is no ambiguity on the face of the instrument that would permit of a different construction, still, if it should be conceded that the language employed in this instrument makes it ambiguous and uncertain as to the intention of the grantor in its execution, then we think that, applying the rule of construction of deeds, as we understand it to prevail in this state, it must still be held that it was the intention of the grantor to convey the land in controversy to appellant, the railroad company. We understand it to be the rule in this state that in case of ambiguity in a deed, or where it admits of two constructions, it will be construed most strongly against the grantor or most favorably to the grantee, and in this case we do not understand that this rule is without application. Therefore, if we should concede that the instrument in question is susceptible of the construction contended for by appellee, to the effect that it was intended thereby to grant to the railroad company only a permissive use of the land in controversy, so long as the grantor might be pleased to do so, yet if the instrument is also susceptible of the construction, under all the facts and circumstances under which the same was executed, that it was the intention of the grantor to convey the land itself to the appellant for railroad purposes, then it must be held, in keeping with the rule just announced, that the deed should be construed most strongly in favor of the appellant, and it should be held that it was the intention of the grantor to convey the land itself to appellant for depot and station purposes, and

not merely to grant to appellant a permissive use of the same.

[5, 6] There is another rule of construction that might be applicable here if it were necessary to invoke its application, which is that where the parties to an instrument in writing have by their acts and conduct placed a construction upon the same, showing the intention of the parties executing the same, then such acts and conduct should be given strong weight by the courts in arriving at the intention of the parties in the execution of the instrument, and, in the absence of clear language in such instrument indicating an intention to the contrary of the parties as expressed by their acts and conduct, the courts should adopt the construction of such instrument as placed upon it by the parties thereto. Now, in this connection, we will say that ever since the execution of the instrument in question, on the 5th day of February, 1876, and down to the date of trial of this case in the lower court, the appellant here, the railroad company, has asserted claim of title to the land in controversy, and has continuously used and occupied the same during all that period of time, and that such occupancy and use has been exclusive of all others; and, indeed, it was found by the trial court, expressly, as we have shown, in its findings of fact above set out, that the appellant has, ever since its going into possession of the land in controversy, continuously used, occupied, claimed, and enjoyed the same under the instrument in question; and, indeed, the trial court found that appellant unquestionably would have title under the statute of limitation of ten years, by reason of its having complied with every requirement of said statute of limitation, were it not prevented from acquiring title under said statute by reason of the fact that it, during all of said time, was claiming the land under the instrument in question, which the trial court construed to give appellant only the permissive use of this land, and to constitute appellant merely the tenant at will of Orange county.

It is also undisputed in the record, and expressly found by the trial court, as we have shown above, that appellant has regularly for all these 40 years paid all the taxes upon this land as the same accrued, and the portion of these taxes assessed by and due to Orange county itself were regularly paid by appellant to that county, and we hold that this fact of itself tends strongly to show that Orange county, for all these years, had construed this instrument as passing, or intending to pass, title to the land in controversy to the railroad company.

Among other authorities cited by appellees in support of their contention that the instrument in question had the effect only to grant to appellant a permissive use of the land in controversy, and to constitute it the tenant at will of Orange county, and that, therefore, appellant could never acquire title under either of the statutes of limitation of this state, are the cases of Everett v. Ry. Co., 67 Tex. 430, 3 S. W. 678, and Llano County v. Knowles, 29 S. W. 549. Upon careful reading of the first case, we find that the issue of limitation was not even interposed by any pleading, nor was any discussion of that question made by the court in that case. As to the second case, we find that, while there was a plea of the statute of limitation of five years, there was no proof whatever offered in support of it, and no discussion whatever by the court on that point.

[7] It follows from what we have said above that this court is of the opinion that the instrument in question in this case was of such character as afforded to appellant a basis for its plea of limitation of ten years; and since the facts as found by the trial court and as shown by the record in this case show that the appellant had been in adverse possession of the land in controversy for more than ten years prior to July 4, 1887, it must be held that the trial court was in error in rendering judgment in favor of appellees for the land in controversy, and in not rendering judgment in favor of appellant therefore on its plea of limitation of ten years. Our conclusion upon this point renders it unnecessary to discuss any further assignments contained in appellant's brief, and it follows that appellant's second and third assignment of error should be sustained, and that the judgment of the trial court in this case should be reversed, and here rendered in favor of appellant for the land in controversy on its plea of title thereto under the statute of ten years limitation, and it will be accordingly so ordered.

Reversed and rendered.