## PITMAN et al. v. STATE.

### No. 6566.

Court of Civil Appeals of Texas. Texarkana.

Oct. 26, 1950.

Rehearing Denied Nov. 23, 1950.

L. L. James, Tyler, for appellants.

R. S. Burruss, Conrad Florence, and Troy Smith, Tyler, for appellee.

WILLIAMS, Justice.

Title 76, General Laws, Civil Statutes of Texas and Articles 4664, 4666 and 4667, R.C.S., Vernon's Ann.Civ.St. arts. 4664, 4666, 4667 of Texas, were pleaded and invoked by appellee C. R. Burruss, County Attorney of Smith County, as agent of the State of Texas, to support his prayer for injunctive relief under the facts alleged.

Upon a hearing had on October 12, 1950, the facts being without dispute, the court found, as recited in the decree, "that plaintiff is entitled to the temporary injunction, the same being within the allegations and the prayer of said petition, for the reason that the court is of the opinion that the defendants are conducting a scheme of gambling, which comes within that class of gaming which the laws of Texas not only authorize the use of the power of the courts to enjoin, but specifically requires the use of that authority to prevent it, and that unless restrained from so doing, the defendants, their associates and aids will con-

tinue to conduct such scheme of gambling *at the places described in plaintiff's first amended original petition filed herein and upon the streets and other public places in the City of Tyler, Texas, and in Smith County, Texas,"* and issued a temporary injunction enjoining Olind H. Pitman and other officials and members of the Tyler Lions Club of Tyler, Texas, pending final hearing, from (1) selling and offering for sale pencils and issuing and delivering tickets entitling the holder or person named upon the stub thereof to a chance of being the winner at the drawing proposed to be held by defendants * * * at the termination of the sale of such pencils now being carried on by the defendants, their associates and aids"; (2) "from using or maintaining any booth, automobile, or place as a place to have, exhibit, or offer for sale, the pencils and tickets" mentioned above; (3) "from conducting the drawing, raffle or lottery advertised to be held on October 31, 1950, in Tyler, Texas, at Tyler, Texas, on said date, *or at any other place or on any other date* whereby the tickets heretofore and hereafter issued or delivered to any person or persons will be drawn or selected for the purpose of determining the winners of the scheme of gambling"; and (4) "from in any manner carrying on, promoting, conducting and concluding the scheme of gambling whereby the defendants, their employees, associates and aids are to dispose of the pencils and tickets entitling the holder of some of the tickets to the prizes, proposed to be drawn on October 31, 1950, at the Tyler Lions Carnival in Tyler, Smith County, Texas."

The decree further stipulates: "This injunction is and shall be effective as to the particular places where the defendants * * * heretofore have been conducting the scheme of gambling *and at any other place or places to which said defendants * * * may move; and to any place which may be selected by the defendants,* their agents, servants, employees, associates and aids, *as a place to conduct* the drawing for the purpose of selecting the winners of the prizes at such drawing."

Prior to October 2, 1950, the date this petition for a restraining order was filed,

the defendants had placed and maintained upon the public streets in Tyler, a certain booth to be used in which to sell pencils and deliver tickets for a drawing to be conducted by the Tyler Lions Club on October 31, 1950, in the city, wherein three prizes were to be given away. This booth with permission of the city had been placed along with the auto, the first prize, on the public square near the intersection of Broadway and Ferguson Streets. With each pencil being sold at such location, a ticket was delivered to the purchaser which carried a stub on which the purchaser of the pencil would write his name and address and deposit same in a box being kept in the booth. The booth carried a sign which read:

"Free 1950 Mercury Given Away
Hallowe'en Night Oct. 31
By Tyler Lions Club
Buy a pencil for $1.00 and receive
Free Ticket for the Drawing
Help The Lions
Help The Blind."

On October 12, 1950, and for several weeks prior thereto the defendants, their associates and aids were engaged in the activity of offering and soliciting for sale, and making similar sales of pencils and delivering tickets, and retaining stubs corresponding to said tickets for said drawing, in and about the City of Tyler, and in the stores and upon the streets thereof. The booth and automobile had been removed from the streets several days prior to the hearing. According to their answer supported by their evidence which is in no wise impugned, defendants would not further use either to sell or give away pencils or tickets.

It was further the testimony that it was the intent for each member to carry around in his pocket the pencils to solicit and sell to any one they might meet who was willing to pay $1 for the pencil but they would have no particular place and none was contemplated in or on which a location or headquarters would be used to sell tickets. Unless enjoined it was the intention to sell the remainder of the pencils as above stated and to carry out the plan of giving the car

away on the night of October 31, 1950, in accordance with defendants' original plans, at the carnival wherever it may be held— "the carnival might be most anywhere— it may be we will have it most anywhere."

Article 4666, supra, relates to the procedure to be followed in the enforcement of the provisions of Article 4664, supra. The latter article is not applicable here for it deals with premises to which people commonly resort.

The injunctive decree here involved, if valid, must rest upon the provisions of Article 4667, which is titled, "Gaming and disorderly houses" and reads:

"The habitual use, actual, threatened or contemplated, of any premises, place or building or part thereof, for any of the following uses shall be enjoined at the suit of either the State or any citizen thereof:

1. For gaming or keeping or exhibiting games prohibited by law.

2. For keeping, being interested in, aiding or abetting the keeping of a bawdy or disorderly house * * *.

3. For carrying on bucket shops * * *.

4. For the voluntary engaging in a fight between a man and a bull for money * * *."

The application of Article 4667, supra, as it relates to Sec. 1 of this Article, is not restricted only to the habitual use of any premises, place or building, but applies likewise to the actual use, threatened or contemplated use of same. The adjectives "habitual," "actual," "threatened" and "contemplated" used in the general provisions of this article modify the noun "use" the subject matter here. An examination of the wording of the act as enacted in 1905 discloses such intent on the part of the Legislature. The difficulty of an attempt to try to ascertain the meaning of an "habitual threatened use" or an "habitual contemplated use" of a place, likewise sustains the conclusions above expressed.

■ It is settled under our decisions by the courts of Texas that the project being pursued and the contemplated drawing for the prizes as hereinabove detailed is a lottery and as such is embraced within the meaning of Sec. 1, Article 4667, supra. Griffith Amusement Co. v. Morgan, Tex. Civ. App., 98 S.W.2d 844; Robb & Rowley United v. State, Tex.Civ.App., 127 S.W.2d 221; Hoffman v. State, Tex.Civ.App., 219 S.W.2d 539; State v. Robb & Rowley United, Tex.Civ.App., 118 S.W.2d 917.

The emergency clause incorporated in S. B. No. 176 of the 29th Legislature which discloses the purpose of the enactment of Article 4667, Sec. 1, reads: "The fact that there is no adequate remedy to suppress gaming houses in this state creates an emergency and an imperative necessity that the constitutional rule requiring bills to be read on three several days be suspended, and that this act take effect and be in force from and after its passage, and it is so enacted." (Italics ours).

■ The foregoing declaration of purpose or intent with the employment in the article of the language " * * * use of. any premises" classifies such an action, as here, as basically an action in rem, that is, to abate the use of a place, premises or building for gaming.

This article contemplates an action against a building, place or premises, in a sense, a condemnation of such where it is being used for gaming. The intent may be compared to an action to padlock certain premises, which universally are, and should be, pointed or singled out by some descriptive data to support an action for contempt of court. It is to be observed that the decree hereinabove set out fails to single out, or identify the place, premises or building, the use of which for the purpose of gaming is to be enjoined. The acts or plan which are set out and enjoined under above detailed paragraphs 1 to 4, both inclusive, fails to describe any place, premises or building, with the exception in paragraph 4 the place is stated to be Tyler, Texas, or any other place.

■ The all-embracing clause hereinabove set out proceeds to identify the premises, place or building condemned for use of gaming as to places where defendants had theretofore operated, namely, most everywhere in Tyler, Texas; to any other place or places defendants may move; and

any place defendants may select as a place to conduct the drawing on October 31, 1950, or at any other date. The use of such general terms which embrace not only the whole of Tyler, Texas, but probably Smith County, leads us to the conclusion that the decree sought to enjoin defendants from committing a crime, that it was a decree in personam, and not a decree in rem against a specific place, premises or building contemplated by and within the provisions of Article 4667, supra. The decree, if authorized, must rest upon the provisions of this article.

 "Except where there is express statutory authority therefor, equity has no criminal jurisdiction, and acts or omissions will not be enjoined merely on the ground that they constitute a violation of law and are punishable as crimes." 43 C.J.S., Injunctions, § 150, P. 760. "It is a well settled rule that equity will not issue an injunction to restrain the commission of a threatened act merely to prevent the violation of a municipal ordinance, especially where the ordinance itself provides penalties for its violation." 28 Am.Jur. p. 343, Sec. 152. "Equity is in no sense a court of criminal jurisdiction, and its reluctance to intervene in matters purely criminal or penal is recognized universally." 28 Am. Jur. 336, Sec. 148. See Dickerson v. Yarbrough, Tex.Civ.App., 223 S.W.2d 535, which quotes above with approval and applies same to an effort to enjoin the use of the streets of San Antonio in the alleged violation of a certain city penal ordinance. In the instant case, the violation of articles of the penal code is involved, which provide for a penalty against all so engaged.

The booth and automobile having been removed from the streets and the use of same for the purposes alleged having been discontinued prior to the hearing, with representation of defendants that the same would not be so used in the future, having been accepted with full credit and faith by all litigants, and having reached the conclusion that the decree was one in personam to restrain the commission of a crime, the judgment of the trial court is reversed and the decree is here in all respects dissolved.

This court is deeply appreciative of the laudable motives of this band of civic-minded gentlemen known as the Lions Club to secure funds with which to care for the blind and those with impaired vision. The Honorable District Judge and the County Attorney are to be highly commended for their efforts to suppress the violation of the law here involved, so prevalent in various forms over the country. But, if the present statutes are defective to accomplish a desired objective by injunction that is the function of our Legislative bodies by enactment of a statute perhaps somewhat similar to Article 667—27 of our Texas Liquor Control Act, Vernon's Ann.P.C., an action in personam, discussed in Ex parte Steele, 137 Tex. 508, 155 S.W.2d 355.

Judgment is reversed and temporary injunction is dissolved.