**TALL TIMBERS CORPORATION,**
Appellant,

v.

**T. D. ANDERSON et al., Appellees.**

No. 13625.

Court of Civil Appeals of Texas.

Houston.

Dec. 8, 1960.

Rehearings Denied Jan. 5, 1961.

On Motion of Appellees Jan. 21, 1961.

.George A. Hill, Houston, for appellant.

Baker, Botts, Andrews & Shepherd, Thos. M. Phillips, Homer L. Bruce, Jas. P. Lee, Houston, for appellees, T. D. Anderson and others.

R. H. Burks, City Atty., Homer T. Bouldin, Senior Asst. City Atty., Houston, for appellee, City of Houston.

WERLEIN, Justice.

This suit was brought by appellees, T. D. Anderson et al., individually and on behalf of the residents and owners of property in Tall Timbers Section of River Oaks Addition to the City of Houston against Tall Timbers Corporation, appellant, for a declaratory judgment and permanent injunction decreeing that a certain 40 foot easement in said subdivision is restricted to use for utility purposes and enjoining the use of such easement by appellant as a roadway.

River Oaks Corporation, the subdivider of Tall Timbers Section, intervened and appellant filed a cross-action for declaratory relief and damages, and impleaded the City of Houston as a defendant. The trial court after a hearing granted appellees and the City of Houston a temporary injunction enjoining appellant from using the disputed easement as a roadway pending the trial of the suit on its merits. From such order appellant has perfected its appeal.

By its First, Second and Tenth Points appellant asserts in essence that the trial court abused its discretion in enjoining appellant from opening and constructing a roadway in the 40 foot easement lying between Lot 1, Block 88 and Lot 1, Block 91, of Tall Timbers Section, and from using such easement as a roadway connecting its property with *Westlane Street in said subdivision;* and further that the court erred in failing to hold that such easement had been dedicated to the public as a roadway, and that appellant as the owner of property abutting such easement is entitled to the use thereof as a public roadway and also as an easement appurtenant to its land.

The evidence shows that on January 10, 1939 intervenor, River Oaks Corporation, executed a document entitled "Reservations, Restrictions and Covenants in Tall Timbers Section of River Oaks", and also authenticated a plat entitled "Plat of Tall Timbers Section, River Oaks, an Addition west of the City of Houston", and that on January 11, 1939 both instruments were filed for record in Harris County, Texas. The plat is reproduced for reference.

It will be noted that on such plat there are two reserved tracts of about six acres each, adjoining Tall Timbers Section, one to the northwest and the other to the southwest of the subdivision. They will be referred to respectively as the north reserved tract and the south reserved tract. It is stated on the plat and in said document that such tracts and Tract 2, Block 92 are not a part of the subdivision. From Inverness Drive to the north reserved tract there is a 40 foot easement, and from Westlane to the south reserved tract there is a 40 foot easement, which easements will be referred to respectively as the north 40 foot easement and the south 40 foot easement. It is the south 40 foot easement that is involved in this suit. It will be observed that said 40 foot easements do not cross any lot or block of the subdivision in whole or in part, as do the 10 foot easements and 20 foot easements which are indicated by dotted lines on the plat.

After recording the subdivision plat and document containing the reservations, intervenor, the owner of the addition, and also of the two reserved tracts, began in the year 1939 to convey various lots by reference to the plat. On March 9, 1959 it conveyed the south reserved tract to Mark Rice and Jacob W. Hershey, describing the same by metes and bounds, making specific reference to the recorded plat. One of the calls for course and distance in the deed reads as follows:

"Thence in a southerly direction along the west line of an easement 40 feet in width lying between Lot 1 in Block 91 and Lot 1 in Block 88 of Tall Timbers Section, a distance of 49.7 feet to the northwest corner of such Lot 1 in Block 88."

The habendum clause in such deed recites:

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Mark Rice of Dallas County, Texas, and said Jacob W. Hershey of Harris County, Texas, their heirs and assigns, forever; * * *"

On the same day said grantees conveyed the south reserved tract to appellant by deed containing precisely the same descriptive matters and character of habendum clause as contained in the deed from intervenor to Rice and Hershey.

Since filing for record said plat and reservations document, no conveyance has ever been made by intervenor to anyone including within its description any portion of the tracts of land lying within the confines of the two 40 foot easements. On or about February 15, 1941 intervenor entered into a written agreement with the late Malcolm S. McCorquodale, a Houston attorney, who then owned Lot 1 in Block 88 of Tall Timbers Section, giving McCorquodale the privilege of improving and using such 40 foot strip as a private drive for access to his property, with the provision that upon request of intervenor at any time McCorquodale would vacate the same and restore it to its original condition. In McCorquodale's letter transmitting the agreement to intervenor it is stated:

"If this easement is ever developed into a street or alley, the logical place for my driveway would be directly off this alley from the west to my garage which is on that side. My only purpose in using a portion of this easement for my driveway was that I did not want to build my driveway on some other part of my lot and then relocate it after the easement is available for a driveway."

In February, 1945, W. Carloss Morris, Jr., a Houston attorney who contemplated buying the north reserved tract, proposed purchasing from intervenor the north 40 foot easement. Intervenor declined to sell the same, stating, " * * * It would be inappropriate and perhaps impossible for us to deed you the right of way in any form

**456**

PLAT OF
TALL TIMBERS SECTION
RIVER OAKS
AN ADDITION WEST OF THE CITY OF HOUSTON

APPENDIX "A"

since it has been dedicated by recordation of the plat." Thereafter, on or about March 5, 1945, Morris consummated the purchase of the north reserved tract, since which time he and certain of his neighbors either residing upon such tract or upon properties adjacent to the 40 foot easement have been using the same for ingress and egress to and from Inverness Drive for vehicular traffic.

In 1951 McCorquodale sold Lot 1 in Block 88 to J. C. Suttles, one of the appellees herein. On March 21, 1951 intervenor wrote Suttles in connection with such lot and the south 40 foot easement, stating, among other things:

"We have been contemplating the opening of this easement through to the 6 acre tract to the rear (southwest) which is owned by this Company. We have been permitting your predecessor in title the use of this easement and we would be willing for you to continue to use it until such time as we are ready to develop this 6 acre tract, which time is uncertain.

"We desire to draw your attention to this matter now so that you will not be inconvenienced or put to any extra expense in doing anything that would prevent us from the future use or opening up of this easement."

Suttles replied to such letter, stating, with respect to the 40 foot easement, "At the present time the driveway is partly on the easement and we would like to continue to use it." On April 5, 1951, intervenor, by letter, accorded Suttles the same privilege to use the 40 foot easement as previously extended to McCorquodale. On March 9, 1959, when intervenor sold the south reserved tract to Rice and Hershey, it gave written notice to Suttles of the termination of the April 5, 1951 letter agreement. Suttles, however, has continued to use a portion of such easement as a driveway.

The evidence further shows that intervenor has never rendered the south 40 foot easement for taxes subsequent to 1939 and no public body has levied or assessed ad valorem taxes against the same; that shortly after the annexation of Tall Timbers Section by the City of Houston on December 30, 1949, the City constructed and has since continuously operated and maintained a water distribution system in the streets and dedicated easements in Tall Timbers Section, and that one of its main water lines is now and has been for over nine years operated and maintained by the City in the south 40 foot easement in controversy, and its right to do so has never been challenged by appellees, some of whom are supplied water through such line; that no person residing in Tall Timbers Section has challenged or sought to prevent the foregoing uses of said 40 foot easements; and that light, gas and telephone companies have constructed and maintained their facilities on and have used the designated 10 foot and 20 foot easements for utility purposes.

According to the affidavit of Hugh Potter, who on December 30, 1938, and at all times pertinent to the statements verified in his affidavit, was the president of River Oaks Corporation in charge of its business, intervenor had no definite plans at the time the plat was recorded for the ultimate use and disposition of the two reserved tracts, but it was apparent to it at such time that access on the part of the public and future owners of both reserved tracts to and from Inverness Drive and Westlane Street, for whatever purposes such tracts of land might subsequently be used, was a matter of paramount importance to intervenor; that in planning and platting Tall Timbers Section, if intervenor had not provided said 40 foot easements for road purposes the north reserved tract would have had no access to any public street, and the value of the south reserved tract for purposes to which it was adapted and might be used would have been greatly lessened; that it was the express desire and intention

of River Oaks Corporation to dedicate to the public for general street purposes said 40 foot easements and that in using the term "streets" in the dedicatory certificate on the plat it was the intention of River Oaks Corporation to include the two 40 foot easements; and that in mentioning the utility systems and easements provided therefor in Paragraph 2 of the Reservations document the phrase "easements provided therefor" referred to the 10 foot and 20 foot easements for utility purposes depicted by dotted lines on the plat.

■ The undisputed evidence hereinabove set forth pertaining to the actions and intentions of intervenor, River Oaks Corporation, supported as it is by the affidavit of Hugh Potter and the original petition of intervenor, was admissible as it does not vary or contradict the reading of the plat and document which must be construed together. It is not recited because of any ambiguity in such instruments but because it shows a practical construction thereof, which should be given strong weight by the court in construing them. Texas & N. O. R. Co. v. Orange County, Tex.Civ.App., 206 S.W. 539, writ ref.; Gulf Coast Water Co. v. Hamman Exploration Co., Tex.Civ.App., 160 S.W.2d 92, writ ref.; City of Athens v. Andrews, Tex. Civ.App., 231 S.W.2d 928, writ ref.

The order of the trial court granting the temporary injunction recites, among other things, that it appeared to the court the easement was created or reserved for the purpose only of installing and maintaining utilities, and that there is a bona fide controversy between the plaintiffs and the City of Houston on the one hand and the defendant on the other hand, as to whether or not an easement has been created which would entitle the defendant (appellant) to build a street on the easement, and that the status quo should be maintained.

■ It is true that there is a bona fide dispute between the parties, but the existence thereof is no proper ground for granting injunctive relief if the facts and law in the case are undisputed. Southland Life Ins. Co. v. Egan, Tex.Com.App., 126 Tex. 160, 86 S.W.2d 722; Hayden v. City of Houston, Tex.Civ.App., 305 S.W.2d 798, writ ref., n. r. e.; City of Houston v. Memorial Bend Utility Company, Tex.Civ. App., 331 S.W.2d 418, writ ref., n. r. e. We are, therefore, called upon to determine whether as a matter of law under the facts presented in the record before us, the trial court erred in granting the temporary injunction on the ground that the easement in question was created or reserved solely for installing and maintaining utilities as asserted by appellees.

■ The law is well settled that on a hearing for temporary injunction the question before the Court is the right of the applicant to a preservation of the status quo pending a final trial of the case. James v. E. Weinstein & Sons, Tex.Com.App., 12 S.W.2d 959. The applicant need only show a probable right and a probable injury.

"Where the pleadings and the evidence present a case of probable right and probable injury, the trial court is clothed with broad discretion in determining whether to issue the writ and its order will be reversed only on a showing of a clear abuse of discretion. Texas Foundries v. International Moulders & Foundry Workers' Union, Tex.Sup., 248 S.W.2d 460, 462. There is no abuse of discretion in the issuance of a writ if the petition alleges a cause of action and the evidence adduced tends to sustain it. Southwestern Greyhound Lines, Inc. v. Railroad Commission, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1235." Transport Co. of Texas et al. v. Robertson Transports, Inc. et al., 1953, 152 Tex. 551, 261 S.W.2d 549, 552.

■■ The trial court's discretion, however, is not unlimited. If the facts are such that only questions of law are presented,

the trial court's action is reviewable and should be reviewed on appeal. The trial court abuses its discretion when it fails or refuses to apply the law to conceded or undisputed facts. Southland Life Ins. Co. v. Egan, supra, and authorities cited.

We are thus confronted with determining whether or not under the undisputed facts in the record before us, appellees showed such probable right and injury as to warrant issuance of the temporary injunction. If a proper interpretation of the plat and document construed in the light of the undisputed evidence shows that as a matter of law the south 40 foot easement was created or reserved for ingress and egress to the south reserved tract as well as for utilities, then the trial court abused its discretion in granting the temporary injunction.

An inspection of the plat shows at once that the two 40 foot easements are distinguishable from the easements reserved for utilities. The latter easements are indicated by dotted lines, whereas the two 40 foot easements are bounded by unbroken lines, and do not cross any lot or block as do the utility easements. One of the 20 foot easements is designated for electric lighting and telephone. The other 20 foot easement is shown on the plat to be for drainage and utilities. There are seven 10 foot easements designated for utilities and five 10 foot easements which are merely designated easements. The size and location of the latter, we think, clearly show they were laid out for utilities. There is nothing in the record to indicate that the 40 foot easements were created or reserved for utilities, much less for utilities only. We cannot conceive of any reason for creating or reserving such wide easements for utilities only. There is nothing in the record to show any need for such easements either for drainage of Tall Timbers or for utilities. Although a water line was laid in the south 40 foot easement, it does not in any way interfere with the use of such easement for in-

gress and egress to and from the south reserved tract. It may also be noted that there is a 10 foot easement designated and probably sufficient for utilities crossing Westlane only 151 feet from the northeast corner of the south 40 foot easement.

■ The lots in the subdivision and also the south reserved tract were sold with express reference to the plat of Tall Timbers. The law is well settled that when a street or way has been laid out on a map and property has been purchased with reference thereto, the owner is estopped to make any use of such way inconsistent with the use to which it has been dedicated by recordation of such map. Oswald v. Grenet, 22 Tex. 94; Martinez v. City of Dallas, 102 Tex. 54, 109 S.W. 287, affirmed 102 Tex. 54, 113 S.W.2d 1167; Manziel v. Railroad Commission, Tex.Civ. App.1946, 197 S.W.2d 490, writ ref. The plat in this case dedicates to the present and future owners of property in Tall Timbers Section, and to the public, the use of the streets shown thereon. Mr. Potter, in his affidavit, stated that it was the express desire and intention of River Oaks Corporation to dedicate to the public for general street purposes said 40 foot easements, and that in using the term "streets" in the dedicatory certificate, it was intended to include them. The plat, other than in such certificate, does not use the word "street", which is a comprehensive term broad enough to include lanes, drives, roads, and ways such as the 40 foot easements.

In Kalteyer v. Sullivan, 18 Tex.Civ.App. 488, 46 S.W. 288, 290, writ ref., the Court stated:

"A way over land set apart for public travel in a town or city is a street, no matter what it may be called. It is the purpose for which it is laid out and the use made of it that determines its character. 'Street' is a general term, and includes all urban ways

which can be and are generally used for the ordinary purposes of travel."

We do not think there is any significance in the fact that Inverness, Del Monte, and Olympia Drives, Westlane and Willowick Road, upon which streets many lots front or abut, are 60 feet wide, and the comparatively short easements leading to the two reserved tracts are only 40 feet wide. The reserved tracts were not intended at the time for immediate use or development as were the lots in Tall Timbers Section. Incidentally, it will also be noted that at the time the plat was filed the width of San Felipe Road abutting some eight lots in Block 88 was also less than 60 feet between its fence lines. It is a matter of common knowledge that there are numerous streets in the City of Houston much less than 60 feet in width.

The fact that the ends of the 40 foot easements are not open but are bound by the unbroken boundary lines of the reserved tracts and streets to which they lead, is of no import under the undisputed evidence adduced at the hearing and in view of the use that has been made of such easements for driveways or roads. It will be observed also that several of the utility easements run right through unbroken lines. It is undisputed that intervenor merely intended to indicate by such lines that it did not assume the obligation of improving such ways. In City of Dallas v. Crow, Tex.Civ.App., 326 S. W.2d 192, ref., n.r.e., the court apparently did not consider that the line separating the disputed strip from the acknowledged street was worthy of comment. In Bowers v. Machir, Tex.Civ.App., 191 S.W. 758, the Court apparently ignored the closed lines of a 20 foot alley. The cases of Duggan v. Buckner, Tex. Civ.App., 155 S.W.2d 661, ref., w.o.m., and City of Atlanta v. Texas & P. Ry. Co., 56 Tex.Civ.App. 226, 120 S.W. 923, writ ref., relied upon by appellees, are quite distinguishable from the instant case as an examination of the plats repro-

duced in those cases, without need for further discussion, will clearly show.

It seems to us inconceivable that the owner of Tall Timbers Section and the two 6 acre reserved tracts adjoining would sell all its lots in the subdivision without providing a way of ingress and egress to and from the reserved tracts. The evidence is undisputed that it did not do so. The locations and forms of the 40 foot easements on the plat reflect the obvious purpose to connect the reserved tracts with the subdivision streets. Had not the north 40 foot easement been created or reserved, there would have been no access whatever to the north reserved tract. Potter's sworn statement concerning possible future uses of the south reserved tract and the contingency that it might be sold in one or more parcels not abutting San Felipe Road and that its value would have been greatly lessened had the south 40 foot easement not been provided for road purposes, substantiates the fact that such easement was not restricted solely to utilities.

Appellees, however, stress the fact that in Paragraph 2 of the Reservations document intervenor reserved *the right to maintain in the streets, drives, lanes and roads and along easements provided therefor,* pipes and conduits for sewerage, water, gas, electricity and telephones, and for all purposes incident to the development and use of said property as a suburban home community. They quote the following clause: "* * * and the above described rights being reserved only for the purpose of facilitating the installation of such utilities, should it ever become the desire of the future owners of said property so to do." We find nothing in such language referable to rights that in any way militates against the right to use the 40 foot easements as roads. The same clause is used in Paragraph 3 of the document and relates to easements and rights of way for utilities *across* said lots and blocks and not to the 40 foot easements

which do not cross any block or lots. (Emphasis supplied.)

 We are not concerned with the fee title to the 40 foot easement in question, but only with the uses that may be made of it by appellant and the public. Appellees purchased their lots with reference to the recorded plat and are bound thereby. They acquired no right to enjoin the use of the south reserved tract for any lawful purpose since it is unrestricted; nor did they acquire the right to enjoin any lawful use of the 40 foot easement in connection therewith. Robbins v. Houck, Tex.Civ.App., 251 S.W. 2d 429, ref., n.r.e. It is our view that when the intervenor sold the south reserved tract, the right to use the south 40 foot easement for ingress and egress to and from such tract in its then condition or subsequently developed state, went with the reserved tract and is now held by appellant. West v. Giesen, Tex.Civ. App., 242 S.W. 312, writ ref.

 In Eidelbach v. Davis, Tex.Civ. App., 99 S.W.2d 1067, writ dism., it is stated that the rule in Texas is well settled that there are two classes of easements, the one inuring to the public in general by the filing of the plat and dedication, and the other inuring to lot purchasers by reason of their contract, which separate and distinct rights may co-exist in contemporaneous operation. We are of the opinion that under the undisputed evidence in this case, the 40 foot easement was intended to be dedicated as a public right of way. We are further of the opinion that appellant, by purchasing the reserved tract with reference to the plat, acquired an additional right to the use of such 40 foot easement by reason of its contract of purchase. Whether the servitude created by the filing of the plat is a dedication or reservation is of no consequence. As stated in Lamar County v. Clements, 49 Tex. 347, the distinction is merely nominal. It is immaterial whether the City of Houston has accepted

the easement as a street, since it is reflected on a plat approved by the City Planning Commission and lots have been sold by reference to such plat. City of Corsicana v. Zorn, 97 Tex. 317, 78 S.W. 924.

At the hearing, appellees with leave of court filed their trial amendment, in which they pleaded that appellant was threatening to lay out, survey, grade, construct and run a road across the easement in question on the theory that it had the right to do so, without the consent of the City Council of the City of Houston, and was threatening to violate the terms and provisions of Chapter 36, art. 1, Sec. 36–2 of the Code of Ordinances of the City of Houston, reading as follows:

"It shall not be lawful for any person to lay out, survey, grade, construct, or run any road or railway, or make any other public improvement, within, through or over any street, or public or private grounds in any portion of the city, or build, erect, or construct across Buffalo Bayou any bridge without the consent of the city council first had and obtained. Each day that such unlawful work progresses, or such unlawful structure remains, shall be held to be a separate offense."

The City of Houston did not file pleadings of any kind, although its attorney did in open court without objection of appellant and with leave of court, orally adopt the pleadings of appellees. It is unnecessary for this Court to determine whether an impleaded defendant has the legal right to obtain relief in the nature of a temporary injunction without filing a written pleading or motion of any kind, since there are other reasons why the City is not entitled to the temporary injunction decreed by the trial court.

Appellant impleaded the City of Houston in its cross-action, alleging that at the time of the annexation of Tall Timbers

Section by the City of Houston, the City assumed full and exclusive responsibility for the repair, maintenance and control of the various streets in the subdivision, and has retained such responsibility. Appellant pleaded that the City's interests were involved in the controversy as to whether the 40 foot easement was a dedicated public street. Appellant has never contended that the City does not have the control of the easement in question for street purposes. It has in effect disclaimed any intention to violate the provisions of said ordinance or to take any steps towards the improvement of the easement for road purposes without first obtaining the consent of the City Council. The presumption is that appellant will not violate a penal ordinance and subject itself to criminal prosecution.

■■■ The statement in appellees' trial amendment that appellant is threatening to violate the terms and provisions of said ordinance is, in the absence of substantiating facts, a mere conclusion wholly insufficient to support the granting of injunctive relief. Wertheimer v. Walker, Tex.Civ.App., 96 S.W.2d 831. Where a legal presumption contrary to the conclusion plead by the applicant, exists, the certainty of pleading required in injunction cases is even more strictly to be applied than ordinarily. In Rawson v. Brownsboro Independent School Dist., Tex.Civ.App., 263 S.W.2d 578, 581, ref., n.r.e., the Court stated:

> "It has long been the rule that complainants seeking injunctive relief, a severe remedy, must present allegations which are direct, certain, and particular. Boucher v. Wissman, Tex. Civ.App., 206 S.W.2d 101 (error ref.). The burden rests upon those applying for an injunction to plead affirmatively the necessary facts, not legal conclusions."

Counsel for appellant at the hearing for temporary injunction stated to the Court that:

> "The notice of this hearing beat the contractor to the City with his application for a permit under the ordinances pertaining to private work in public streets. We did not pursue that for the reason that it seemed useless to do so, with this hearing scheduled."

It is manifest from the evidence and counsel's statement in open court that appellant recognized the City had such control over the easement for street purposes as provided in said ordinance, and that appellant intended to seek a permit in compliance therewith.

■■■ The record does not disclose any authority or power in the City of Houston to enforce said ordinance by injunction. If we assume that appellant is threatening to violate the ordinance or is actually violating the same, no injunctive relief could lawfully be granted to either appellees or the City of Houston enjoining the violation of such penal ordinance under well established law. The rule is clearly stated in Pitman v. State, Tex. Civ.App., 234 S.W.2d 436, 439:

> "'Except where there is express statutory authority therefor, equity has no criminal jurisdiction, and acts or omissions will not be enjoined merely on the ground that they constitute a violation of law and are punishable as crimes.' 43 C.J.S., Injunctions, § 150, p. 760. 'It is a well settled rule that equity will not issue an injunction to restrain the commission of a threatened act merely to prevent the violation of a municipal ordinance, especially where the ordinance itself provides penalties for its violation.' 28 Am.Jur. p. 343, Sec. 152. 'Equity is in no sense a court of criminal jurisdiction, and its reluctance to intervene in matters purely criminal or penal is recognized universally.' 28 Am.Jur. 336, Sec. 148. See Dickerson v. Yarbrough, Tex. Civ.App., 223 S.W.2d 535, which

quotes above with approval and applies same to an effort to enjoin the use of the streets of San Antonio in the alleged violation of a certain city penal ordinance. In the instant case, the violation of articles of the penal code is involved, which provide for a penalty against all so engaged."

This is not to say that when there are repeated and continued violations, an injunction will not lie to protect the applicant's property, so that the owner will not be relegated to actions for damages. In the present case there are no repeated and continued violations of any law, and there is no property right in the City which requires injunctive relief.

We are not unmindful of the fact that this appeal is from a decree granting a temporary injunction and that when the case is tried on its merits there may be other and additional evidence. We have concluded, however, that under the evidence and the record before us appellees and the City have failed to show either a probable right or a probable injury, both of which are essential to the granting of injunctive relief, and the Trial Court abused its discretion in granting the temporary injunction. In view of our holding, it is unnecessary to discuss appellant's other Points of Error.

The judgment of the Trial Court is reversed and the temporary injunction granted appellees and the City of Houston is dissolved without prejudice to the City's right to enforce the ordinance in question by such proceedings in law as the City Council may direct.

Reversed and remanded for trial on the merits.

### On Motion of Appellees.

On motion filed by appellees, with consent of Court, after their motions for rehearing were overruled, and in order that the issues involved herein may be preserved and not become moot pending application for writ of error to the Supreme Court, the order entered December 8, 1960, dissolving the temporary injunction shall be and the same is hereby suspended until appellees file in this cause their application for writ of error to the Supreme Court of Texas and until the final disposition of the case by the Supreme Court; provided that this suspension order shall cease to be effective at 5 o'clock p. m., Saturday, February 4, 1961, if at that time appellees have not filed application for writ of error to the Supreme Court, and further provided that this suspension order shall not otherwise change or modify the judgment of this Court heretofore entered dissolving the temporary injunction.

COLEMAN, J., not sitting.