GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. J. BAUDAT ET AL.

Delivered April 18, 1898.

**1. Practice on Appeal—Injunction.**

An interlocutory order dissolving an injunction will not be disturbed on appeal where the petition and answer upon which the order was based are not before the appellate court, the pleadings having subsequently been amended.

**2. Public Road—Railway Crossing.**

The breach by a railroad company of its duty to construct and maintain a crossing over a public highway entitles the county to recover the cost of constructing and maintaining the same from the company.

**3. Same—Description.**

The description of a proposed highway in a petition for its establishment may be aided by a reference to the location of an old road.

**4. Same—Petition for—Signatures.**

The signature to a petition for the establishment of a highway affording access to an existing highway from premises completely inclosed by other lands of a person living in the inclosure is sufficient under the statute, and the signature of eight freeholders is not required in such case.

**5. Same—Notice.**

Irregularities in a notice given by the jury of view of the time when they will proceed to lay out a public road and assess the damages is not material where the party complaining appeared by his agent and put in his claim for damages, and had as full opportunity to be heard as if more formal notice had been given.

**6. Same—Oath of Jurors of View.**

The oaths of the jurors appointed to lay out a highway and assess the damages need not be reduced to writing or shown by the record.

**7. Same—Notice.**

The notice by the jury of view of the time when they will proceed to lay out a highway and assess the damages required by the statute is sufficient to require the property owner to follow up the proceedings into the commissioners court, and, if desired, to appeal to other courts, and no notice of the time when the commissiners court will take up the matter is necessary.

**8. Same—Estoppel.**

The petitioners for the establishment of a public highway over a railroad track are not estopped by the condemnation proceedings instituted against the company from showing that the road over the track at the locus in quo was already public, or that they had a private right of way at the point over the road.

**9. Same—Appeal to County Court—Procedure.**

The statute providing for the establishment of public roads is not unconstitutional upon the ground that the appeal allowed from the commissioners court is ineffective for want of necessary provisions regulating it, as the procedure on such appeal is made the same as in appeals from justice courts, and even if no appeal at all were provided, it would not follow that the statute was unconstitutional.

10. **Same—Constitutionality of Statute.**

That the statute for the establishment of highways provides for the appointment of the jurors of view by the commissioners court without the concurrence of the property owners does not render it unconstitutional.

11. **Same—Payment for Land Taken Required.**

The court has no power in condemnation proceedings to take property necessary for the construction of a highway across a railway track without paying the value of the land taken. ·

APPEAL from Fort Bend. Tried below before Hon. T. S. REESE.

*D. R. Pearson* and *A. L. Jackson,* for appellant.

*Slyfield & Davidson,* for appellees.

WILLIAMS, ASSOCIATE JUSTICE.—Appellee Baudat, acting as road overseer under orders of the Commissioners Court of Fort Bend County, was proceeding to construct a road crossing over appellant's right of way and track, when the latter sued out an injunction to restrain him from doing so. Fort Bend County intervened as defendant, and both defendants filed answers, and an interlocutory order was entered dissolving the injunction. The cause was subsequently tried, and, upon peremptory instructions from the court, verdict was rendered against the appellant upon its application for the injunction, and in favor of the county for the cost of a crossing which it had caused to be constructed over the railroad.

The pleadings and evidence showed that a petition was presented by J. Baudat to the Commissioners Court, which is as follows:

"The petition of the undersigned citizens and residents of Fort Bend County, Texas, respectfully represent unto your honorable court that they reside on, as their permanent home, a parcel of land situated on the north bank of the Brazos River, about one mile east of the town of Richmond, and on the south side of the line of railway of the Galveston, Harrisburg & San Antonio Railway Company. That the land upon which they reside is a portion of the William Morton league, and is so bounded by the river and lands of other people and said line of railway as to be completely surrounded and inclosed by said lands and by the line of said railway. That there is a public road leading from Richmond to Walker Station, passing (parallel with said line of railway) within 100 yards of petitioners' land, over which petitioners have heretofore been accustomed to travel in going to and returning from their nearest trading point, mills, gins, schoolhouses, church houses, and county seat, all situated in said town of Richmond. That about six months since the railroad company fenced up the outlet over their said line of railway, thus inclosing the lands of petitioners, and cutting them off from their said postoffice, nearest trading point, mills, gins, schoolhouses, churches, and county seat.

"Wherefore, petitioners pray that your honorable court will open a third-class road over said railway, and over the lands of William Ryon to

said public road, a distance of about 100 yards. Said road to begin at a point on the northern line of petitioners' land in said Morton league, and thence north over the right of way of said G. H. & S. A. Ry. Co. and the lands of said William Ryon to a point in the southern line of said public road, leading from Richmond to Walker Station at same point where the old road of petitioners formerly was. (Signed) J. Baudat."

On the 10th day of April, 1895, the court entered the following order: "April 10, 1895: Application of J. Baudat for neighborhood road. It is this day ordered that the road prayed for be laid out, and A. D. McNabb, O. H. Kirkland, Adam Neal, J. W. Ryon, and Ike Griffin, are appointed a jury of view to lay out said road."

A commission to the jurors was duly issued and served, which contained no description of the proposed road, except that it stated that the order was made upon the petition of J. Baudat, and directed that the jurors proceed to lay out and describe "such road." An oath of Kirkland, McNabb, and Neal, such as is prescribed in the statute in such cases, appears in writing in the record. It does not appear whether any of the other persons took the oath or not.

A notice, beginning "We the jury of view," and signed by Kirkland and McNabb, was issued and served upon appellant's local agent at Richmond, giving the time when the jury would proceed to lay out the road and assess the damages. At the time specified, such agent, by authority of appellant, appeared and presented to the jury a claim for $105 as value of the right of way to be taken, and the cost of putting in the crossing and cattle-guards and adjusting fences. No other notice was given. Three of the jurors acted, and proceeded to lay out the road, and in due time presented to the Commissioners Court the following report:

"We the undersigned jury of view appointed by your honorable court on the 10th day of April, 1895, to survey and lay out the following road: To begin at a point 1½ miles below Richmond on the road leading from Richmond to Walker Station. Thence in a southerly direction to the Brazos River. Beg leave to report that on the 22d day of April, 1895, we proceeded to view and lay out the said road as follows: Beginning on the public road leading from the town of Richmond to Walker 1½ miles below the town of Richmond at the old crossing on the G. H. & S. A. R. R., thence south 269 feet to the line between William Ryon and J. Baudat's land a stake, thence east 30 feet with said line, thence north 269 feet to the said road leading from Richmond to Walker to a stake, thence west with said road 30 feet to a stake, the place of beginning crossing the said G. H. & S. A. R. R. Co.'s right of way 50 feet by 30 feet and lands of William Ryon 30 by 219 feet.

"The said G. H. & S. A. Ry. Co. claims that it will cost them the sum of $105 to put in said crossing. As we are not posted as to the cost of such work can not assess the damages to said railroad, we assess the damage of William Ryon at ½ acre of land, more or less, and value the

same at $15 and cost of fencing said road at $10, the total amount of damages of William Ryon at $25.

"That as the said Baudat claims no damages, having a road already established on his land leading to said road, we have not assessed him any damages. We find that this road is laid out over the old established road and that the said railroad has maintained a crossing, at the point this roadway is to cross their right of way, for a number of years, and that said railroad had their road fenced and the crossing taken out only a short time ago. The right of way of the road viewed and laid out by us is over the same route and lands known as the Worthington road." Signed by Kirkland, McNabb, and Griffin, the three jurors who acted.

On this the following order was made: "May 14, 1895. The report of the jury of view appointed to lay out neighborhood road. The report examined and approved and the road established according to said report as of the third class, and J. Baudat appointed overseer of said road, and is instructed to open said road. There is allowed upon the claim of J. W. Ryon the sum of $5. The claim of the G. H. & S. A. Ry. Co. is rejected, it not being necessary to put in a crossing. The treasurer is ordered to set aside to the order of the said Ryon, out of the road and bridge fund, $10."

The report of the jury was also recorded in the minutes.

Baudat, as road overseer, after the above order was entered, gave written notice to appellant to open up the road and put in a crossing. and, this not being done, he proceeded to open the fences along the right of way and put in a crossing at the expense of the county, amounting to $51. This was torn up by appellant, and Baudat was about to restore it when the injunction was sued out.

The evidence shows that Baudat lives south of the railroad and north of the Brazos River, and that his premises are shut in on the east and west by other inclosures. At the time he moved there, in 1887, there was a road leading out to the public road north of the railroad, and a crossing for it was kept up by appellant across its track. This road was his only means of travel to the county seat, a mile or so distant, to churches, mills, and schools. This condition existed until 1894, when appellant proposed to him that it would put in a farm crossing, with gates through its fence, if he would assume the duty of keeping the gates closed and indemnify it for all damages for stock killed by reason of the gates being left open, and reserving the right to remove the crossing and gates at pleasure. Upon his refusing to sign an agreement to this effect, appellant fenced its track and the proceedings before stated were taken.

There is, in the statement of facts, evidence to the effect that prior to the construction of the railroad, in 1854, there was a road at the place where this one was ordered opened, and that appellant had made and maintained a crossing there from that time until 1894, repairing and renewing it from time to time at the demand of persons then occupying the premises where Baudat now lives. The evidence tends quite

strongly to show a dedication of an easement to the public, as well as the existence of a private right of way in the owners of the abutting land. But there is a bill of exceptions taken by appellees which shows that this evidence, when offered by them, was excluded by the court, on objection of appellant, as irrelevant to the controversy, and that the rights of the parties were made to depend on the effect of the condemnation proceedings.

It was admitted that prior to 1880 appellant had acquired title to its right of way, and the briefs assume that this means that it acquired the fee, but the statement on this point in the record is not as clear as it might be. This, however, does not affect our decision. It was also admitted that the land of appellant necessary to be taken for the road was of the value of $50 and the cost of putting in a crossing and its incidents was $63. Appellant's refusal to open the road was based upon the fact that its claim had not been paid. We shall not undertake to discuss at any length many of the points urged for reversal, but simply announce our conclusions upon most of them.

1. We can not say that the court erred in dissolving the injunction by interlocutory order, as we have not before us the petition and answer upon which its action was based, the pleadings having been afterward amended.

2. The court did not err in excluding the evidence offered by appellant to show that the jury of view promised its agent that the claim for damages would be allowed. No question in the case, as we view it, could be affected by such evidence.

3. The court did not err in admitting evidence to show the cost to the county of constructing the crossing. If the road was a public one, which will depend upon questions discussed later on, it was the duty of appellant to construct and maintain the crossing, and its refusal to do so made it necessary for the county to provide one. We think it clear that the breach of such duty would entitle the county to recover the cost as damages. Railway v. Milam County, 90 Texas, 355. But we think the court did err in peremptorily instructing a verdict in favor of the county for the sum claimed, as will appear further on.

4. The proceedings by which it was sought to open the road contained a sufficient description. The space to be occupied by it was made certain by the reference to the place where the old road had crossed. Robson v. Byler, 37 S. W. Rep., 872. Baudat living in an inclosure, his signature to the petition was sufficient, eight freeholders not being required in such case.

5. The purpose of the statute in requiring the giving of notice by the jury of view to appellant was fully met by that which was given. Appellant appeared by its agent and put in its claim for damages, and had as full opportunity to be heard as if a more formal one had been given. We need not, therefore, determine whether or not the signature of two of the jurors was sufficient.

6. The petition admits that the three persons who acted took the

oath prescribed by the statute, and claims that the statute does not provide for a sufficient oath, in that it fails to require that the jurors swear that they will assess the damages properly. We think there is nothing in this contention. No claim was made by the pleading that any of the three jurors who acted had not been sworn. The report of the jurors is signed by one of them whose oath does not affirmatively appear in the proceedings, and is not signed by one whose oath does appear. This fact is not alleged; but if it were, the answer would be that it was not necessary that the oaths should be reduced to writing or in any way to be shown by the record. Sneed v. Falls Co., 41 S. W. Rep., 481. It is not made to appear that the oath was not in fact taken; and we are not prepared to hold that the fact, if it were shown, would vitiate the proceedings if otherwise regular.

7. The road which the Commissioners Court undertook to establish was not to be a private way for the exclusive use of Baudat or any other person or persons, but was to be open and free to the public, and was therefore to be a public road. The fact that Baudat would have been the one most benefited by it does not lead to the conclusion that it was only his way. The proceedings were had under the law authorizing the laying out of public roads, and their effect, if properly pursued, would have been to make this road public. Elliott on Roads and Streets, 146, 147; Lewis on Em. Dom., sec. 167, p. 233, and authorities there cited.

8. No other notice than that which the jury of view is directed to give is required by statute, and that is sufficient to require the property owner to follow up the proceedings into the commissioners court, and if desired, to appeal to other courts. Notice of the time when the Commissioners Court would take up the matter was not necessary.

9. The contention is made that the appeal allowed by the statute from the commissioners court is ineffective, for want of necessary provisions regulating it, and that hence the statute is unconstitutional. We can not admit either proposition. The Constitution gives power to the Legislature to increase or diminish the jurisdiction of the county court, and this statute confers upon it appellate jurisdiction in such proceedings. Const., art. 5, sec. 22. The procedure is made the same as in appeals from justice courts. Trogden v. Tram Co., 88 Texas, 302. But if no appeal at all were provided, it would not follow that the statute is unconstitutional. Railway v. Ferris, 26 Texas, 599.

10. Nor does the fact that the jury is to be appointed by the commissioners court without the concurrence of the property owners render the statute unconstitutional. Authorities supra.

We have passed upon all of the objections, save one, made by appellant to the proceedings taken to open the road.

But there is one objection urged which we think is fatal to the judgment of the court below, and that is, it allows the taking of appellant's property without compensation. The proceedings instituted for its condemnation are based upon the assumption that appellant had property rights to be condemned to public use. The court had power to cause a

public road already existing to be freed from obstructions and opened, but in doing so it could not conclude any one by its determination of the fact that the road was public. Had it proceeded in this way, the question would have remained open to be tried between the county and property owners over whose property the alleged road ran, whether or not the public road legally existed. That course was not adopted, but resort was had to condemnation proceedings to take the property necessary for the road. The court had power to do this upon making adequate compensation, and compliance with this condition was essential to the validity of its action. It is conceded that the property to be taken was worth $50, and it follows that it could not be taken until its value was paid or deposited as required. Trogden v. Tram Co., supra.

Unless this was done, the court had no power by its order to take the property. Although, as we have held, the proceedings were sufficient to give the court jurisdiction to condemn, it still had no power to do so without compensation. And it must follow that these proceedings alone are not a sufficient answer to the petition of appellant seeking to prevent the taking of its property, and that if the relief it seeks is to be denied it must be upon facts outside of those proceedings. The jurisdiction of the court was to condemn the property, and not to determine conclusively that the road already existed. Since the condemnation proceedings are not an answer to the suit, the fact that the road was already a public one must be proven. We think that appellees are not estopped by the condemnation proceedings, when these fail, from showing that, without them, the road was public and that the Commissioners Court therefore had the right to appoint an overseer and have it opened. Nor do we think that Baudat himself is estopped, by anything appearing, from showing if he can that he has a private right of way at this point over the road. But before such facts as these can be the basis of a judgment, they must be proven by the defendants and found by the court or jury trying the case. The rules from which the existence of a public or private way is to be determined have often been laid down by the courts in this State, and a restatement of them here is unnecessary. Ramthun v. Halfman, 58 Texas, 551; Gilder v. City of Brenham, 67 Texas, 350. These cases and others referred to in the opinions sufficiently discuss the subject. Under them the court could not properly instruct the jury to find for the defendants on such an issue, even if the evidence upon the subject, which we have stated, was not ruled out, as the bill of exceptions indicates. It is immaterial whether the bill of exceptions or the statement of facts should prevail, since, if full effect be given to the facts contained in the latter, it presented only circumstantial evidence of the dedication and acceptance of a public road which, under the decisions referred to, would have to be left to the jury.

It follows that the court erred in instructing a verdict for defendants. Reversed and remanded.

*Reversed and remanded.*