## MANZIEL v. RAILROAD COMMISSION et al.

### No. 9580.

Court of Civil Appeals of Texas. Austin.

Oct. 30, 1946.

Rehearing Denied Nov. 13, 1946.

Pollard, Lawrence, Blackburn, Crawford & Jarrel, W. Dewey Lawrence and Willis Jarrel, all of Tyler, for appellant.

Grover Sellers, Atty. Gen., and James D. Smullen, Asst. Atty. Gen., for appellees Railroad Commission of Texas and its Members.

Rex G. Baker, Nelson Jones and D. H. Gregg, all of Houston, and Powell, Wirtz, Rauhut & Gideon and J. A. Rauhut, all of Austin, for appellee Humble Oil & Refining Company.

McCLENDON, Chief Justice.

Rule 37 case. The appeal is from a final judgment in a suit seeking to set aside an order of the Commission (Railroad Commission of Texas), which denied an application of Manziel for a permit to drill an oil well on lot 13 of the Resse Addition to the town of Hawkins, as an exception to Spacing Rule 37. The sole issue in the case is whether the ownership of lot 13 was segregated from lots 11 and 12 in said addition (upon which there was already an oil well) subsequently to the severance of the mineral title; which question turns upon whether the fee to a 20 foot strip between lots 12 and 13 passed to R. B. Mc-Clenny as grantee under a deed executed by W. R. Parrish on October 21, 1913, conveying: "Lots Nos. 11, 12 & 13 in Reese Addition Hawkins Texas each lot being 75 feet by 170 feet; as shown by map of same, a copy of which is recorded in Deed Records of Wood County, Texas." If the fee to the strip did not pass, but remained in Parrish, lot 13 would be entitled, as a matter of law, to one well to prevent confiscation of property. If the fee passed to Parrish's grantee lot 13 would not be entitled to a well, since lots 11, 12 and 13 would constitute a single tract for development purposes, and the prior well on lots 11 and 12 was all the three lots taken together would be entitled to. The suit was by Manziel against the Commission. The Humble (Humble Oil & Refining Company) owner of an adjacent leasehold, intervened as party defendant. The trial was to the court, the judgment denied recovery, and Manziel has appealed.

The controlling facts, which are without dispute, follow: May 23, 1912, L. H. Reese and wife deeded to W. R. Parrish a tract of land 162 varas N-S by 456 varas E-W, excepting therefrom a tract in its S E corner 164 feet E-W by 265 feet N-S. This deed was filed for record in Wood county June 12, 1912, at 2:00 o'clock p. m. The same day and hour there was also filed for record a map or plat of "Reese Addition Hawkins Texas." It was shown, without controversy, that this map covered the entire tract conveyed in the Reese to Parrish deed, the excepted 164x265 feet (known as the Colored Baptist Church lot) being left entirely blank, the W line of which was coincident with the E line of lot 13, Reese Addition. It was also shown that the original Hawkins townsite was bounded on the north by the Brown Addition, north of and adjoining which was the

492

Reese Addition. Following is a photo-static copy of the recorded Reese Addition map, with the lettering and church lot superimposed:

Reese Addition, Hawkins Texas

The day following filing of this deed and map Parrish conveyed lots 1 and 2 and 7 and 8; and thereafter at various dates up to February 12, 1914, he conveyed to various grantees all the remaining lots in the addition; the conveyance of lots 11, 12 and 13 being (as stated) on October 21, 1913. Parrish did not render any property in the addition for taxation subsequently to 1914, and there was no evidence that he ever thereafter asserted any claim to any property therein prior to December 1940, when he executed an oil and gas lease covering "all the land shown by the plat of the Reese Addition to the town of Hawkins, Wood County, Texas, which said plat is recorded in Volume 30 page 4 of the Deed Records of Wood County, Texas, save and except such parts of said Reese Addition as have been heretofore sold by me." There was no evidence regarding by or for whom the map was prepared or filed for record, further than what inferences may be drawn from its simultaneous filing with the deed, and the reference to the map and its record in the descriptions in the deeds by Parrish conveying the several lots in the addition. These descriptions (except as to lot numbers) were substantially the same as that in the deed from Parrish to Mc-Clenny conveying lots 11, 12 and 13, quoted above, except that in some of the deeds the dimensions of the lots conveyed were not given. Hawkins was not incorporated until April 1941, and there was no evidence of any acceptance, express or implied, on behalf of the public of any dedication to a public use of the 20-foot strip between lots 12 and 13. It is not necessary to set forth the title to lots 11, 12 and 13 subsequently to the Parrish-McClenny deed in 1912, further than to state that the title to the three lots was thereafter held in common unsegregated ownership until after the Hawkins oil field was discovered and the mineral title was severed by oil and gas leases.

The question thus presented is a very simple one, and is, we think, resolved by the well established principles that: (1) the sale of lots by reference to a recorded plat constitutes, as between the grantor and grantee a dedication of the streets, alleys and other ways designated in such plat. City of Corsicana v. Zorn, 97 Tex. 317, 78 S.W. 924; Coombs v. City of Houston, Tex.Civ.App., 35 S.W.2d 1066; and (2) the sale of a lot abutting on a street, alley or other way by number or other appropriate designation conveys the fee to the center of such street, alley or way, absent a contrary intention either expressed or implied. Emerson v. Bedford, 21 Tex.Civ.App. 262, 51 S.W. 889 (error ref.); Bond v. Texas & P. R. Co., Tex. Civ.App., 39 S.W. 978 (error ref.). These principles are so well established as to be now regarded as elementary. An extended citation or digest of authorities would serve no useful purpose.

The cases cited by appellant to the effect that a dedication to be effective in so far as concerns the public, must be accepted, either expressly or by implication, by the public or by some agency representing the public, have no bearing upon the issue at bar, and need not be cited or considered. As between the grantor and grantee, under the circumstances stated, the dedication is effective and irrevocable by the former. McLennan County v. Taylor, Tex.Civ.App., 96 S.W.2d 997.

Nor is it material here who prepared the plat, for whom it was prepared, or by whom or whose authority it was filed for record. Parrish adopted and made the plat his own by selling the lots with reference to it.

The only question remaining is the proper interpretation of the plat; that is, the status given therein to the 12 20x170-foot strips between the several blocks in the addition. It is to be observed that the entire tract acquired by Parrish from Reese was platted, the general scheme being two tiers of blocks 170 feet deep, extending E-W, separated by an 80-foot street, and each having a rear alley, with a 20-foot space between each block connecting the alley with the street. With the exception of the block containing lots 14 and 15, all the lots are of the same dimensions. All blocks, except the lot 13 half block, contain two lots. Lot 14 on the extreme east of the N tier is provided with a 29-foot alley corresponding with the 20-foot spaces;

and every other lot, except 1 and 27 on the extreme west, has a side frontage on one of the 20-foot strips. Twenty-five of these lots sold at an average of $96 per lot, the price ranging from $75 to $125. Lot 20 which was evidently improved sold for $750; lot 21 adjoining it sold the following day to the same grantee for $100. The price of the remaining lot (19) is not shown, the deed not being of record. A release of a vendor's lien, dated July 21, 1914, shows it was sold December 15, 1913, the day before lot 20 was sold. These sales indicate an average value of about $1.30 a front foot. There is no express designation of the purpose of the 20-foot strips; but they were connected with the street on one end and the alley on the other, with no line of division between. Nor is there any designation of lots and blocks as such, the former being designated by number only with dimensions given in numbers only but manifestly in feet, and so shown in the deeds from Parrish. The distance from the W line of lot 1 to the E line of lot 13 is 1,095 feet. If the 20-foot strips be not construed as passageways of some kind, the alley to the south would be a blind one on the E end, and for practical purposes as an alley would be of little value to most of the lots in the S tier. The same is largely true of the N alley, the distance from the W line of lot 27 to the E line of lot 14 being 1,230 feet. We do not think there is any reasonable construction of the plat other than that the 20-foot strips were intended as passageways between the central street and the alleys to the north and south for the benefit of those acquiring the several lots, and that consequently the fee to the center thereof passed under the deeds to the grantees of the lots abutting thereon. What designation should be given to these passageways, whether streets, alleys or other ways, is wholly immaterial. And, as already stated, it is likewise immaterial whether there was ever a public acceptance of the dedication. There is no tenable theory supporting a reservation by Parrish of title to these 20-foot strips in himself. The plat itself conclusively negatives such reservation; and this is confirmed, if confirmation were necessary, by Parrish's sub-

sequent conduct up to the discovery of oil in the Hawkins field. See plat in Emerson v. Bedford, above; also see Humble Oil & Refining Co. v. Goldsmith, Tex.Civ.App., 196 S.W.2d 665.

The trial court's judgment is affirmed.

Affirmed.