**T. D. ANDERSON et al., Petitioners,**

v.

**TALL TIMBERS CORPORATION et al., Respondents.**

No. A–9817.

Supreme Court of Texas.

March 4, 1964.

Rehearing Denied and Dissenting Opinion Filed April 29, 1964.

Baker, Botts, Shepherd & Coates, Homer L. Bruce, Thomas M. Phillips, James P. Lee and Robert J. Malinak, Houston, R. H. Burks, City Atty., Houston, Homer T. Bouldin, Asst. City Atty., for petitioners.

George A. Hill, O. J. Cadwallader, Houston, for respondents.

STEAKLEY, Justice.

This suit was instituted by T. D. Anderson and others, petitioners here, as residents and home owners in Tall Timbers Subdivision of River Oaks Addition to the City of Houston. It was against Tall Timbers Corporation, a Respondent here. River Oaks Corporation, an intervenor below in support of Tall Timbers Corporation, is also a Respondent here. The purpose of the suit was to enjoin the opening as a public street of an area shown on the original subdivision plat as a forty foot easement. The background facts will be briefly stated.

River Oaks Corporation established Tall Timbers Subdivision of the River Oaks Addition in 1939. It authenticated and placed of record a plat entitled "Plat of Tall Timbers Section, River Oaks Addition, a Section West of the City of Houston"; it also executed and placed of record a document entitled "Reservations, Restrictions and Covenants in Tall Timbers Section of River Oaks." The area in controversy was depicted on the plat as an enclosed strip entirely within the subdivision. It was bounded on all sides by solid lines and was marked "40′ Easement." As shown on the plat the area is between Olympia Drive and Westlane on the east, and a southwest reserved tract of approximately six acres, expressly excluded from the subdivision, on the west; and between Lot 1 of Block 88 of the subdivision on the

south, and Lot 1 of Block 91 of the subdivision on the north. It is undisputed that the area has never been used as a public street.

The excluded southwest reserved tract was sold by River Oaks Corporation to Tall Timbers Corporation in 1959. It is not subject to any of the restrictions of the adjoining subdivision. There is no claim that in connection with the sale it was represented to Tall Timbers Corporation that the easement area in question was originally dedicated to public use as a street. The reserved tract abuts on San Felipe Road, a main traffic artery in this section of Houston. Subsequent to the purchase, Tall Timbers Corporation constructed an 147-unit apartment project on the reserved tract and thereafter set about to open a public street over the forty foot easement area in controversy. Its purpose was to provide its tenants, and thus the general public, with a street between the apartments and the interior subdivision streets of Olympia Drive, Del Monte Drive, Westlane, Inverness Drive and Willowick Road. This suit resulted.

The controversy has been the subject of three prior appellate decisions. The original suit was filed on October 20, 1959. After hearing, the trial court granted a temporary injunction against the building of the street, pending a trial on the merits. The temporary injunction order was appealed by Respondents and the Houston Court of Civil Appeals ordered the temporary injunction dissolved. Tall Timbers Corporation v. Anderson et al., 342 S.W.2d 452. We reversed the judgment of the Court of Civil Appeals, holding that the trial judge did not abuse his discretion in granting the temporary injunction to preserve the status quo until the case could be tried on its merits. 162 Tex. 450, 347 S.W. 2d 592. Neither the majority nor the dissenting opinion of this Court purported to write upon the merits of the case. The majority opinion expressly disclaimed that we were doing so; the dissenting opinion argued that we should do so.

The instant appeal is from the subsequent judgment of the trial court granting the motion of Anderson and others, Petitioners here, for summary judgment. The Fort Worth Court of Civil Appeals, to which the case had been assigned in the docket equalization process, concurred with the previous opinion of the Houston Court of Civil Appeals, reversed the judgment of the trial court, and, in effect, rendered judgment for Respondents. 370 S.W.2d 214.

We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court. Our disagreement is with the initial and basic holding of the Court of Civil Appeals that "[t]he plat of Tall Timbers Section shows on its face a legal dedication of the south 40 ft. easement for a public way." This is the essential position of Respondents. Our conclusion to the contrary is that the plat does not purport to dedicate the easement area to the public to be used as a street. The tract was designated only as an easement and the easements on the plat were not dedicated to public use.

The plat is reproduced in the opinion of the Houston Court of Civil Appeals in 342 S.W.2d at pages 456 and 457. As relevant here, the plat has three types of designations on its face: open areas constituting the interior subdivision streets; ten foot areas designated for utilities; and two areas, one in controversy here, marked "40' Easement." Appearing on the face of the plat is the following recitation:

"We, Hugh Potter and O. J. Cadwallader, President and Secretary, respectively of River Oaks Corporation, owner of the property subdivided on this plat of Tall Timbers Section of River Oaks Addition, do hereby make subdivision of said property for and in behalf of said River Oaks Corporation, according to the streets, lanes and tracts shown hereon, and designate said subdivision as Tall Timbers Section of River Oaks Addition in the A. C. Reynolds League in Harris County, Texas,

and in behalf of River Oaks Corporation *dedicate* to the present and future owners of said property, and to the public, *the use of the streets shown hereon."* [1]

The only dedication expressed on the face of the plat was *the use* of the streets *shown thereon;* there was no dedication of any other area or tract shown on the plat, whether designated for utilities or as easements. The reference in the words of dedication to the streets shown on the plat obviously refer to the open areas identified as Olympia Drive, Del Monte Drive, Inverness Drive, Westlane and Willowick Road. The strip in question, in contrast to the open areas constituting the streets of the subdivision, was reserved as an easement. It is fully enclosed by solid lines and could not constitute an east-west means of egress and ingress between any lots or blocks of the subdivision; the west end of the strip abutted on a reserved tract which was expressly excluded from the subdivision.

We look also to the contemporaneously executed and recorded document entitled "Reservations, Restrictions and Covenants in Tall Timbers Section of River Oaks," to further ascertain the legal effect of the reservation of the forty foot easement. Referring to the recorded plat, this document recited that "Said map has been duly authenticated by the President and Secretary of River Oaks with proper certificate *showing dedication of the streets, drives, lanes and roads* to the use of the present and future owners of the lots and to the public *subject to* Reservations, Restrictions, and Covenants herein contained. * * *" It will be noted that River Oaks Corporation limited even its dedication of the streets, drives, lanes and roads shown on the plat. The reservations were as follows:

"RESERVATIONS

"That in so authenticating said map for record and in *so dedicating the streets, drives, lanes and roads* to the use of the present and future owners of said property and to the public, there shall be and are hereby reserved in RIVER OAKS, the following rights, title and easements, which reservations shall be referred to and made a part of, and construed as being adopted in, each and every contract, deed or other conveyance, executed or to be executed by or on behalf of RIVER OAKS, conveying said property or any part thereof:

"(1) The legal fee simple title in and to each and all of the several streets, drives, lanes and roads, as shown on said map or plat, is hereby reserved in RIVER OAKS, subject to the limited dedications herein expressed.

"(2) RIVER OAKS reserves the exclusive right to operate a system or systems of transportation in, over, upon, along and under said streets, drives, lanes and roads, and to erect and maintain therein and thereon wires and poles for the purpose of constructing and maintaining a system of electric light, power, telegraph and telephone line or lines and connections; and to construct, lay and maintain in, along and under any and all of said streets, drives, lanes and roads, and along easements provided therefor, all pipes, conduits and ditches necessary and proper for the construction and maintenance of a system of drainage and a system of sewerage, and for the supply of water, gas, light and power, telegraph and telephone service to said area and inhabitants thereof, and for all other purposes incident to the development and use of said property as a suburban home community; but no obligation rests upon RIVER OAKS to install any of the above described utilities, or any other utilities, *it being contemplated that this section of RIVER OAKS is to be used*

I. All emphasis added.

for suburban homes, and the usual accessory uses, and the above described rights being reserved only for the purpose of facilitating the installation of such utilities, should it ever become the desire of the future owners of said property so to do.

"(3) RIVER OAKS reserves the necessary easements and rights of way for the purpose of constructing, maintaining and repairing a system or systems of light, electric power, telegraph and telephone line or lines, gas, sewers, or any other utility across said lots and blocks in said Tall Timbers Section, as shown on aforesaid map to be hereafter recorded in the Harris County Map Records (to which map and record reference is here made) in addition to the reservations enumerated in the preceding paragraph, but no obligation rests upon RIVER OAKS to install any of the above described utilities or any other utilities, it being contemplated that this Section of River Oaks is to be used for suburban homes, and the usual accessory uses, and the above described rights being reserved only for the purpose of facilitating the installation of such utilities should it ever become the desire of the future owners of said property so to do.

"(4) RIVER OAKS reserves the right to make minor changes in and additions to the above easements for the purpose of enabling utilities to be installed more efficiently, should installation thereof ever be made.

"(5) Neither RIVER OAKS nor any utility company using the easements or other rights of way herein referred to shall be liable for any damages done by either of them, or their assigns, agents, employees or servants, to shrubbery, trees, flowers or other property of any owner situated on the land covered by said easements or adjacent to said rights of way."

The Restrictions and Covenants are, in part, as follows:

## "RESTRICTIONS

"For the purpose of creating and carrying out a uniform plan for the parceling and sale of said Tall Timbers Section, and the lots, blocks and other tracts of land therein contained, as a district set aside for suburban homes and the uses ordinarily accessory thereto, the following restrictions upon the use of said property are hereby established * * *."

 *  *  *  *  *  *

"(2) This property shall be used for single-family residence purposes only, and this shall be interpreted to exclude hospitals, duplex houses, apartment houses, multiple family houses of any kind. * * *

"(3) Only one single-family residence, and its usual accessories, shall be constructed or permitted on each lot or separate parcel of land. * * *

"(4) No residence, garage, outhouse or other permanent structure shall be erected nearer than fifty (50) feet to the property line on Willowick Road, Inverness Drive, Del Monte Drive, or Westlane * * *."

Three dominant purposes are apparent in the subdivision plat and the related document of Reservations, Restrictions and Covenants: first, the dedication to the present and future owners of the lots in the subdivision, and to the public, was expressly limited to the use of the streets shown on the subdivision plat and there was no dedication of the easement areas shown on the plat; second, the subdivision was to constitute and be preserved as a district set aside for suburban homes, with the use of "the lots, blocks and other tracts of land therein contained" restricted to "the uses ordinarily accessory" to a suburban home subdivision; and, third, River Oaks Corporation reserved the exclusive right to con-

struct and maintain facilities required for the furnishing of utilities to the residents of the subdivision if it should elect to do so. As to the latter, River Oaks Corporation went to great lengths to preserve these exclusive rights. The dedication of the streets, drives, lanes and roads was further limited by the reservation of fee simple title and of the exclusive right to operate a system of transportation and to erect and maintain utility wires and poles. Various strips were also expressly reserved for utility purposes. It was this dominant purpose of River Oaks Corporation which also found expression in the specific exclusion of any dedication to the public other than the use of the streets shown on the subdivision plat.

The conclusive fact is that the easement tract in controversy was shown only as an easement and the easement areas shown on the plat were not dedicated to the public for any use. The easement tract was not marked as a street nor was there any indication that it was intended to be a street. It was excluded from the only public dedication, expressed or implied, either on the plat or in the document of Reservations. Accordingly, there are no circumstances under which it can be said that the reservation of the forty foot easement area in controversy carried a dedication as a public street.

This Court in Oswald v. Grenet, 15 Tex. 118, denied a dedication for a public use upon the holding that "there was no evidence of the ground having been used as a common, and nothing showing for what it was designed. * * * Had the lots been sold by deed referring to it as a common, or had it been long used as such without the assertion of a private right by the owner * * * it might have been regarded as a common."

In the second appeal a verdict sustaining a dedication to the public was upheld by this Court. Oswald v. Grenet, 22 Tex. 94. Both Courts of Civil Appeals regarded this decision as controlling the case at bar.

But it was found by this Court that the supporting evidence met the following test:

"A setting apart, or dedication to a public use, to be effectual, need not be by deed; nor need it be evidenced by the use of it having been continued for any particular time; it is enough, that there has been some clear, unequivocal act, or declaration of the proprietor, evidencing an intention to set it apart for a public use, and that others have acted in reference to, and upon the faith of, such manifestation of intention."

Also, the space on the map of the addition before the Court in Oswald was unmarked and undesignated, and the decision was rested upon the "peculiar situation and form" of the unmarked space which gave rise to the natural inference that the space was intended to remain open for public use, together with the finding by the Court "that the acts and declarations of the proprietor were such as to create this expectation, is indisputably established by the concurrent testimony of all the witnesses."

Martinez v. City of Dallas, 102 Tex. 54, 109 S.W. 287, 102 Tex. 54, 113 S.W. 1167, was also cited by the Courts of Civil Appeals. This case involved a strip shown on the plat recorded in 1884 as opening on designated streets. The opinion also recited the fact that the strip had been open and used by pedestrians as a common way. The holding upon the authority of Oswald was that the recorded map clearly indicated that the strip was intended as a street or as an open way reserved for public use. Maisen v. Maxey, Tex.Civ.App., 233 S.W. 2d 309, wr. ref., n. r. e., also citing Oswald, upheld as a park an area marked on the subdivision map as "Terraced Park Area." There was both an express dedication of the public ways and easements shown on the map and direct evidence that the lots had been sold upon the representation that the area was to be a dedicated park.

Similarly, the decision in Manziel v. Railroad Commission, Tex.Civ.App., 197 S.W.2d 490, wr. ref., rested, in large part, upon the

fact that the 20-foot strips in question "were connected with the street on one end and the alley on the other, with no line of division between" ; it was held that the strips were intended as passageways between the central street and the alleys for the benefit of the lot purchasers.

In City of Brownsville v. West, Tex.Civ. App., 149 S.W.2d 1034, wr. dism., the Court held that the plat there involved did not show a clear and unequivocal present intention of dedication to the public of a parcel of land marked upon the plat as "Proposed Park." The Court reasoned as follows:

"In the first place, there is a statement on the plat expressly dedicating all streets, roads and alleys shown on the plot, but no mention is made of the 'Proposed Park.' It would seem that the rule 'expressio unius est exclusio alterius' should be here applied. The fact that the streets, roads and alleys are expressly dedicated, would exclude the idea that the 'Proposed Parks' were also dedicated."

To the same effect is the decision in Fudge v. Hogge, Tex.Civ.App., 323 S.W.2d 663, no wr. hist. The Court was influenced by the fact that " * * * [t]he dedicatory words expressly provide that the streets, alleys and easements shown on the plat shall be dedicated to the public use forever. But the lakesite is not mentioned. Omission of the lakesite from the words of dedication must be construed under the circumstances to mean that the lakesite was excluded from the dedication."

In City of Atlanta v. Texas and Pacific Railway Co., 56 Tex.Civ.App. 226, 120 S.W. 923, wr. ref., the Court concluded against a dedication to public use upon the reasoning that " * * * If the open lines at Common Street indicated an intent to dedicate a continuous street, the closed space at what would otherwise be the junction points of the other streets evidently evinced the absence of any such intention [to dedi-

cate to public use] on the part of the railway company as to the latter streets. It also appears from the map that the railway company intended to reserve this strip inclosed between the lines on the east and west sides of its track for railway purposes. This is made evident by the words, 'Reserved for railway purposes,' written thereon."

We observe, also, that the easement area here in controversy was a tract of land "therein contained," i. e., in the subdivision, within the specific language of the document of Reservations, and its use, as well as the use of the lots, blocks, and other tracts of land in the subdivision, was expressly restricted to the uses ordinarily accessory thereto. It cannot be seriously contended that the conversion of the easement tract into a public street running between the apartments constructed on the excluded reserved tract, and the interior streets of the subdivision, would be a use ordinarily accessory to this section of River Oaks which had been set aside as a district for suburban homes. .

The most, then, that could be said is that the easement reservation is subject to a use not contrary to the express and implied limitations embodied in the subdivision plat and the document of Reservations; or, that the easement was subject to such use as River Oaks Corporation might have desired had it elected to furnish utility services. As an example of the first, the subdivision plat shows another forty foot easement area which is located between the interior subdivision streets and a northwest reserved tract. In the course of time River Oaks Corporation sold this reserved tract for use as a residence and subject to the Reservations, Restrictions and Covenants applicable to all of the lots and tracts in the subdivision; in effect, the northwest reserved tract was thereby brought into and made a part of the subdivision. This easement has been used by the owner of the residence as a private driveway between his home and the subdivision streets. In contrast to the southwest reserved tract, which

abuts on and hence has access to San Felipe Road, the northwest tract is surrounded by the Buffalo River, by a railroad track and roadbed and by other lots of the subdivision. It is thus apparent that the use of the easement tract for purposes of egress and ingress between the residence and the subdivision streets, whether based on an express or implied grant or way of necessity, which matters are not before us, would in no event violate the express and implied limitations embodied in the plat and document of Reservations. For further example it can be supposed that River Oaks Corporation actually utilized the easement area in controversy for "pipes, conduits and ditches necessary and proper for the construction and maintenance of a system of drainage and a system of sewerage and for the supply of water, light and power, telegraph and telephone service." Under such supposed facts it would seem clear that neither the residents of the subdivision, nor the subsequent purchaser of the reserved tract in question, nor the public, could have required River Oaks Corporation to vacate such use and convert the area into a public street.

There remains the question of whether Respondent, Tall Timbers Corporation, possesses any individual right in the easement tract in controversy which will support its use as a private right of way between the apartment tract and the interior subdivision streets for the use and benefit of the apartment tenants. Such a right is an interest in land which can only be conveyed by a grant. It is subject to the Statute of Frauds and the Statute of Conveyances and generally must be conveyed in writing. City of San Antonio v. Grandjean, 91 Tex. 430, 41 S.W. 477, 478, 44 S.W. 476. As exceptions to the rule there are implied easements appurtenant, easements by estoppel in pais, and easements by public dedication. Drye v. Eagle Rock Ranch, Inc., Tex., 364 S.W.2d 196.

There was no express grant here. The only reference in the deed to the easement tract is in the metes and bounds description of the land conveyed, viz., "* * * Thence in a southerly direction along the west line of an easement 40 feet in width lying between Lot 1 in Block 91 and Lot 1 in Block 88 of Tall Timbers Section a distance of 49.7 feet to the northwest corner of such Lot 1 in Block 88, which corner is marked by an iron pipe, continuing therefrom * * *." This reference, as well as the reference in the deed to the subdivision plat, was patently for descriptive purposes only. City of Houston v. Cyrus W. Scott Mfg. Co., 45 S.W.2d 270, wr. ref.

Nor was there an implied grant of an easement appurtenant. We said in Eagle Rock that the engraftment of an easement by implication requires that the use be apparent and in existence at the time of the grant; that the use have been continuous; and that the use be necessary to the use of the dominant estate. These conditions are not present here. With respect to estoppel in pais, there is no claim that the grantors represented to Tall Timbers Corporation in its purchase of the reserved tract that the easement area is or would be a street, or that Tall Timbers Corporation expended any monies in reliance thereon.

It follows that the cornerstone of the private rights asserted by Tall Timbers Corporation must be that the subdivision plat and document of Reservations dedicated the easement tract to public use and that Tall Timbers Corporation obtained private contract rights thereto in addition to the rights inuring to the public in general. Indeed, Tall Timbers Corporation in its brief states its position in such respect as follows: "When River Oaks Corporation filed the plat of Tall Timbers Section dedicating the South 40' easement to public use, the public in general acquired a right to the use of such easement. But Respondent acquired an additional right to the use of such easement by reason of its contract of purchase. The two classes of easement, the one inuring to the public in general by the filing of the plat and dedication, and the other inuring to Respondent by reason of its contract of purchase, are separate and dis-

tinct rights which may coexist in contemporaneous and harmonious operation and one may be destroyed without necessary impairment of the other." But the private right so asserted is precluded by our holding in the forepart of this opinion that the easement tract in controversy was not dedicated to public use.

■ Accordingly, we hold that the easement tract under review was not dedicated as a public street and that there is no individual right in the Respondent, Tall Timbers Corporation, to utilize the tract as a through way between its apartment tract and the interior streets of Tall Timbers Subdivision of River Oaks Addition. Petitioners are therefore entitled to the injunctive relief for which they sue.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

SMITH, Justice (dissenting).

I respectfully dissent. A thorough consideration of the record in this case since the filing of respondents' motion for rehearing has convinced me that the opinion of this court, delivered on March 4, 1964, has led to the entry of a judgment against Tall Timbers which is not in keeping with the record and prior decisions of this court.

The erroneous result is best revealed in a paragraph of the opinion which reads:
"The conclusive fact is that the easement tract in controversy was *shown only as an easement and the easement areas shown on the plat were not* dedicated to the public for any use. *The easement tract was not marked as a street* nor was there any indication that it was intended to be a street. It was excluded from the only public dedication, expressed or implied, either on the plat or in the document of Reservations. Accordingly, there are no circumstances under which it can be said that the reservation of the forty foot easement area in controversy carried a

dedication as a public street." (Emphasis added.)

The opinion contains other language which indicates an erroneous conception of the rules governing the interpretation of unambiguous instruments, in this case, the plat. The reference in Tall Timbers' deed to the plat of Tall Timbers Section was not for descriptive purposes only. The Intervenor, River Oaks Corporation, owned all the title to the lands laid out, surveyed and platted on the plat of Tall Timbers Section at the time of the dedication and filing for record of the plat. This plat specifically included Tall Timbers' property. The Tall Timbers' "Reserved" tract was created by and had its origin from such plat. It is undisputed in the record that Tall Timbers purchased its property by reference to and in reliance upon the plat of Tall Timbers Section upon which the disputed easement was shown as a street or roadway.

It is undisputed that Tall Timbers before accepting its deed of March 9, 1959, relied on the plat and document of Tall Timbers Section and attributed great value to the use of the disputed easement (the Southwest 40' easement) as a street or roadway connecting Tall Timbers' property to Westlane street. Furthermore, the record shows that Tall Timbers had no notice or knowledge of any of the claims or contentions of Anderson that the disputed easement is a private easement restricted to use for utility purposes for the exclusive use and benefit of the residents and owners of property in Tall Timbers Section, or that such easement is in any manner restricted to use for utility purposes, or that Tall Timbers had no right to the use of such easement as a roadway.

The undisputed evidence is to the contrary, that is, the undisputed evidence conclusively shows and does not raise an issue of fact that Tall Timbers, in particular, and the purchasers of all properties abutting the two 40' easements, purchased with reference to the plat designating the 40'

easements and that such easements were to be used as a passageway or roadway.

The summary judgment record in this case clearly demonstrates the correctness of the position taken by Tall Timbers. The record shows that in 1951, J. C. Suttles was the owner of Lot 1, Block 88. This lot is situated adjacent to and immediately south of the Southwest 40′ easement involved in this case. The record shows that on April 5, 1951, J. C. Suttles entered into a contract with River Oaks Corporation whereby Suttles approved and accepted the following contract:

"Dear Mr. Suttles:
"This relplies to your letter of March 29 and supplements our letter of March 21 with reference to the 40-foot easement abutting the northwesterly side of Lot 1, Block 88, in the Tall Timbers Section of River Oaks.
"This letter will serve to extend to you the privilege of improving and using as a private driveway for access to your site (part of Lot 1, Block 88) this 40-foot strip, with the understanding that you will vacate same promptly upon request of this company at any time, and, if requested by this company, will restore it to its original condition, and that further, should you sell or lease your property, you will inform the new owner or tenant of this stipulation in writing, and furnish this company copy thereof.
"Please sign and return one of the duplicate copies of this letter, keeping the other for your file.
"Yours truly,
RIVER OAKS CORPORATION
By H. A. Kipp, Vice President
"Approved and Accepted:
J. C. Suttles"

For a better understanding of the scope of this contract and to show conclusively that the 40′ easement was reserved by River Oaks Corporation particularly for the benefit of the "Reserved" 6-acre tract, I call attention to River Oaks' letter of March 21, 1951, addressed to J. C. Suttles, which led to the April 5, 1951, contract. That letter reads:

"Dear Mr. Suttles:
"We have been advised by Mr. Malcolm S. McCorquodale that he recently sold you his property in Tall Timbers.
"In this connection, we would like to call your attention to the 40-foot easement along the northwesterly line of your property, with which you are no doubt already familiar. We have been contemplating the opening of this easement through to the 6-acre tract to the rear (southwest) which is owned by this company. We have been permitting your predecessor in title the use of this easement and we would be willing for you to continue to use it until such time as we are ready to develop this 6-acre tract, which time is uncertain.
"We desire to draw your attention to this matter now so you will not be inconvenienced or put to any extra expense in doing anything that would prevent us from the future use or opening up of this easement.
"We would be glad to know whether you desire to continue the use of this easement along the above lines.
"Yours very truly,
RIVER OAKS CORPORATION
By H. A. Kipp, Vice President"

On March 9, 1959, the same day Tall Timbers obtained its deed, River Oaks addressed another letter to J. C. Suttles. This letter contains a request in keeping with the April 5, 1951, contract. It reads:

"Dear Mr. Suttles:
"We refer to our letter to you dated April 5, 1951, bearing your approval, and wish to advise that, at long last, we find it necessary to terminate the arrangement under which we granted you our consent to use the 40-foot easement as a driveway for access to your

site (part of Lot 1, Block 88, of Tall Timbers Section).

"We regret that circumstances now make it necessary to withdraw this privilege and would therefore request that you vacate the property promptly.

"We are glad that we were able to make this arrangement available to you over these past several years and would appreciate your acknowledging receipt of this letter at your early convenience.

"Yours truly,

RIVER OAKS CORPORATION

By O. J. Cadwallader

Vice President & Treasurer"

The only answer to this letter is the filing of this law suit in 1959, by J. C. Suttles et al., sometime after the date of the letter and deed to Tall Timbers.

Still more convincing evidence is to be found in the agreement of 1941 between Malcolm S. McCorquodale, Suttles' predecessor in title, and River Oaks. In that agreement it was expressly recognized and recited that a 40′ easement or right of way connecting Westlane with a six-acre tract (Reserved tract) existed. Mr. McCorquodale stated in his letter of February 17, 1941, to River Oaks, "[i]f this easement is ever developed into a street or alley, the logical place for my driveway would be directly off this alley from the west to my garage, which is on that side. My only purpose in using a portion of this easement for my driveway was that I did not want to build my driveway on some other part of my lot and then re-locate it after the easement is available for a driveway."·

Another convincing circumstance that the two 40′ easements were reserved by River Oaks for use of the public in connection with the "Reserved Southwest" approximately 6 acres and the reserved "Northwest" tract is the admission of Mr. W. Carloss Morris, Jr., purchaser of the "Northwest" reserved tract. Mr. Morris, during the negotiations to purchase the "Northwest" reserved tract from River Oaks Corporation stated on one occasion that River Oaks would not be justified in warranting the Northwest 40′ easement to him, but proposed that the 40′ easement be conveyed to him in the form of a quitclaim. Mr. Morris referred to the fact that the 40′ easement was marked "Easement" on the plat. River Oaks replied to the Morris suggestion by advising that *"it would be inappropriate and perhaps, impossible for us to deed you the right-of-way in any form, since it has been dedicated by recordation of the plat."* (Emphasis added.) The fact remains that the 40′ easement was never conveyed to Mr. Morris. On March 5, 1945, River Oaks Corporation did convey to Mr. Morris the reserved tract by a deed in which the tract was identified and described by express references to the subdivision plat.

It is undisputed that Tall Timbers had knowledge of this agreement when it purchased its "Reserved Tract" on March 9, 1959, ·from River Oaks Corporation for $258,000.00, and obligated itself to River Oaks Corporation to construct an apartment project at a cost estimated to be in excess of $1,200,000.00. Certainly these facts disprove the holding of this court that Tall Timbers cannot recover because the plat merely shows an "Easement." The evidence is undisputed that the 40′ easements were reserved for public use as a passageway or roadway, and that Tall Timbers purchased its property by reference to and in reliance upon the plat of Tall Timbers Section. If the prior decisions of this court are to remain effective, this Court must hold that the reserved 40′ easements were reserved for a passageway or roadway for the use of the owners of the "Reserved Tract." This is true even though the only evidence was the plat with the 40′ easements designated thereon.

This case went off on summary judgment. Yet, this court attempts to go into facts in an effort to explain why the Northwest 40′ easement was used as a passageway or roadway. This Northwest 40′ easement occupies the same status as the Southwest 40′ easement. Tall Timbers and all others

who purchased with reference to the plat not only had a plat of record which designated two 40′ easements, but also were aware of the continuous use, beginning with the initial development of the North "Reserved" tract, of the North 40′ easement shown on the plat of Tall Timbers Section by the owners and occupants of the North "Reserved" tract and of the properties abutting the lateral length of such North 40′ easement, as a street or roadway affording access by automobile and otherwise to and from Inverness Drive.

In addition, the undisputed facts show the present use and the continuous use for more than 23 years of most of the length and course of the disputed Southwest 40′ easement by the owners and occupants of Lot 1, Block 88, of Tall Timbers Section, as a driveway affording access by automobile and otherwise to and from Westlane street. This use has been permissive only and not adverse or exclusive. It is clear from the record that it was the intention of River Oaks Corporation, the owner of all the land at the time of the filing of the plat, to dedicate the 40′ easements as passageways or roadways for public use. There is not one word in the record which warrants this court in upholding an injunction depriving Tall Timbers, its tenants and other persons having whatever occasions to go to or depart from Tall Timbers' property of the free and unrestricted use of the disputed Southwest 40′ easement as a street or roadway.

In this regard, it is worthy to note that River Oaks Corporation has never rendered the South 40′ easement or the North 40′ easement or the lands affected thereby or any portion thereof or interest therein for ad valorem taxation by the State of Texas, County of Harris, the City of Houston or any other political subdivision with respect to any year subsequent to 1939. River Oaks Corporation has never paid ad valorem taxes to any such public body at any time or times since 1939 on either or both of such 40′ easements or any interest therein, and no such public body at any time or

times since 1939 has levied or assessed ad valorem taxes against such property or reflected such property upon its tax rolls as constituting the private property of River Oaks Corporation. Furthermore, at no time prior to the appearance of the City of Houston made on February 3, 1960, in the temporary injunction proceeding in this cause, did the City of Houston communicate to River Oaks Corporation its refusal, or intention to refuse, to accept any of the public dedications of streets, easements and rights of way shown on the plat. The record in this case clearly discloses that it was the express desire and intention of River Oaks Corporation, in filing for record on January 11, 1939, the subdivision plat and document of Tall Timbers Section of River Oaks Addition, to dedicate to the public for general street purposes the 40′ easement lying between Lots 7 and 8, Block 91, and also the 40′ easement in controversy, lying between Lot 1, Block 91, and Lot 1, Block 88, as reflected on the subdivision plat. The authorities to be discussed below necessitate this court's giving effect to such intention.

In my opinion, the question of whether the disputed southwest 40′ easement has been dedicated to public use is resolved by the well-established principle that the sale of lots by reference to a recorded plat constitutes, as between the grantor and grantee, a dedication of all the alleys, streets and other ways designated in the plat. See Adams v. Rowles, 149 Tex. 52, 228 S.W.2d 849 (1950). This principle has been regarded as so elementary that "[a]n extended citation or digest of authorities would serve no useful purpose." Manziel v. Railroad Commission of Texas, wr. ref'd., Tex.Civ.App., 197 S.W.2d 490, 493 (1946).

In determining whether the above "elementary principle" is applicable to the present case, it is this court's duty to inquire (a) whether the plat of Tall Timbers Section shows the existence of the disputed easement, (b) whether it can be ascertained with reasonable certainty the purpose for

which such easement was intended and (c) whether Respondent purchased its "Reserved" tract in reliance on such plat, in order to determine whether the disputed easement has been dedicated to the use so ascertained. As this court stated in Fall v. Thompson, (1935) 126 Tex. 326, 87 S.W.2d 712, 713:

> "If it be true that the map of Zang's Crystal Hill addition which was filed for record shows the existence of this parkway in the middle of Zang boulevard, and if it can be ascertained with reasonable certainty the purpose for which this parkway was intended, and if it be true that plaintiff purchased her property within said addition in reliance upon said map, then she acquired by purchase as an incident to her property the right to have such parkway left open for the uses and purpose for which it was dedicated. In other words, she has a right to say that it shall not be diverted to any use inconsistent with the purpose for which the dedication was made. City of Corsicana v. Zorn, 97 Tex. 317, 323, 78 S.W. 924; Clement v. City of Paris, 107 Tex. 200, 175 S.W. 672."

The dedicatory language in the document entitled "Reservations, Restrictions and Covenants in Tall Timbers Section of River Oaks" reads as follows (referring to the plat of Tall Timbers Section):

> " * * * Said map has been duly authenticated by the President and Secretary of RIVER OAKS, *with proper certificate showing dedication of the streets, drives, lanes and roads, to the use of the present and future owners of the lots and to the public,* subject to the reservations, restrictions and covenants herein contained, to the same extent as though copied at length in said dedication certificate." (Emphasis added.)

This court has held that the word "streets" appearing in the dedicatory certificate is limited in its application to the *named* streets appearing on the plat, and thereby excludes any *easements* shown on the plat as also being dedicated to public use. I cannot agree with such a narrow construction, which gives controlling effect to what a thing is *called*.

A way over land set apart for public travel in a town or city is a street. This is true, no matter what the passageway may be called, inasmuch as it is the *purpose* for which it is laid out, and the use made of it, that determines its character. The term "street" is a general term, and includes all urban ways which can be and are generally used for the ordinary purposes of travel. See Kalteyer v. Sullivan, (1898) wr. ref'd, 18 Tex.Civ.App. 488, 46 S.W. 288; City of Houston v. Hughes, Tex.Civ. App. (1955) 284 S.W.2d 249, wr. ref'd, n.r.e.; Town of Refugio v. Strauch, Tex. Com.App., 29 S.W.2d 1041 (1930).

Jones v. Sun Oil Co., wr. ref'd., Tex.Civ. App., 110 S.W.2d 80, involved the construction of a deed containing a reservation which read "W. E. Jones is retaining free and unobstructed use of a twelve-foot *lane*." (Emphasis added.) This language was construed to reserve to Jones "an *easement* or passageway" rather than the fee to the strip in question.

The question as to what constitutes a "road" was before the Court in Bradford v. Moseley, Tex.Com.App., judgm. approved, 223 S.W. 171. It was therein stated that:

> "What is a public road is in a measure dependent on the facts of each particular case, but *the character of a road does not depend on its length, nor upon the place to which it leads, nor is its character determined by the number of people who actually travel upon it.* Decker v. Menard (Civ.App.) 25 S. W. 728; Elliott on Roads, ss 1 to 7. A road may be established which is a cul-de-sac. Id. A road open to the public is a public road, though one person may be most benefited by it. Galveston, [H. & S. A. R. Co.] etc. v.

Baudat, 18 Tex.Civ.App. 595, 45 S.W. 939. It is a highway if there is a general right to use it for travel, and if it is open to the use of all the people. Elliott on Roads, ss 1–3; Sumner [County] etc. v. Interurban, etc., 141 Tenn. 493, 213 S.W. 412 [5 A.L.R. 765]." (Emphasis added.)

With the above-cited authorities in mind, it is clear that both of the 40′ easements in Tall Timbers Section, each being a narrow way so located on the plat as to be obviously designed for use as a roadway to a "Reserved" tract, and one of which has been used as a roadway for more than ten years, are "streets," are "lanes," and are "roads" within the scope and application of the dedicatory certificate on the plat and within the dedicatory language in the reservations document.

Apart from the above-cited authorities, there is another reason why I cannot agree with the majority holding that the 40′ easement in dispute is not a "street," "drive," "lane," or "road," but that it is *still* a part of the Tall Timbers Section. The definition of what comprises Tall Timbers Section of River Oaks is clearly set out in the reservations document as follows:

"BE IT RESOLVED:

"That the reservations, restrictions and covenants hereinafter set out shall be, and the same are, made applicable to the Tall Timbers Section of River Oaks, an Addition west of the City of Houston, consisting of Blocks Eighth-eight (88), Eighty-nine (89), Ninety (90), Ninety-one (91) and Ninety-two (92), lying and being situated in the A. C. Reynolds League, Harris County, Texas, as shown on map prepared by H. A. Kipp on file in the office of RIVER OAKS, and which map shall be hereafter recorded in the Harris County Map Records, and that said blocks, together with the streets, drives, lanes and roads, are hereby designated, and shall be known and described, as the Tall Timbers Section of

River Oaks, an Addition west of the City of Houston. The two tracts marked 'Reserved', one at the northwest corner, the other at the southwest corner of said map, approximating 6 acres each, as well as Tract (Lot) 2 in Block 92, are not a part of this Section. * * *"

The above definition as to what is included within Tall Timbers Section is limited to:
"*First*, the numbered Blocks 88, 89, 90, 91 and 92 'as shown on map' (excluding Tract (Lot) 2 in Block 92); and
"*Second*, the 'streets, drives, lanes and roads'."

Obviously the 40′ easement in dispute does not fall within the first category. Therefore, it must come within the second category, and therefore constitute a "street, drive, lane or road," or it necessarily does not make up a part of Tall Timbers Section.

This brings us to the question as to whether it can be ascertained with reasonable certainty the purpose for which the southwest 40′ easement was intended. According to the majority of the Court "[t]he easement tract was not marked as a street *nor was there any indication that it was intended to be a street*." (Emphasis added.) I do not agree.

It should be emphasized that the only intention properly to be considered by this court, in determining the purpose of the disputed easement, is the intention of the original subdivider, River Oaks Corporation. See Shields v. Harris County, Tex. Civ.App., wr. ref'd., n.r.e., 248 S.W.2d 510. It would unduly lengthen this dissent to set out in detail the evidence showing that River Oaks Corporation did intend for the 40′ easement to be used as a passageway or roadway. It is clear that the River Oaks Corporation did intend the 40′ easements to be used as roads or passageways.

Finally, the evidence is undisputed that Tall Timbers Corporation did purchase its reserve tract in reference to and reliance

on the plat of Tall Timbers Section. According to the majority, "the cornerstone of the private rights asserted by Tall Timbers Corporation must be that the subdivision plat and document of Reservations dedicated the easement tract to public use * * *" and further that "the private right so asserted is precluded by our holding * * * that the easement tract in controversy was not dedicated to public use. * * *" While I am firmly convinced that there was a dedication of these 40′ easements to the use of the public, a contrary holding should not automatically foreclose Tall Timbers Corporation's right to use the southwest easement. As stated by this court in Wolf v. Brass, 72 Tex. 133, 12 S.W. 159, 160:

> "* * * *Under the facts of this case we think it wholly immaterial whether there was a dedication of this alley to the use of the public or not.* Technically speaking, a dedication can be made to public uses only; but, if the proprietor of the fee sells and conveys lots with reference to an alley or street not then opened on land owned by him, the individual purchasers thereunder acquire an easement in the land designated as an alley or street, and such alley or street becomes charged with the servitude incident to such easement. *Such purchasers have, by virtue of the easement thus acquired, the right to have such street or alley kept open, whether the public has or not accepted the dedication by some acts of user.* Oswald v. Grenet, 22 Tex. 94; Washb. Easem. 181." (Emphasis added.)

In my opinion, it is beyond doubt that in purchasing and paying for their reserve tract, Tall Timbers Corporation purchased and paid for, as appurtenant to it, every advantage, privilege and easement which the plat represented as belonging to the reserved tract. This being so, Tall Timbers Corporation has the right to have such easement left open for use as a roadway. See City of Corsicana v. Zorn, 97 Tex. 317, 78 S.W. 924.

The opinion of the majority primarily rests on the holding that the 40′ easement in dispute was an easement *reservation*, restricted to use for utility purposes for the exclusive use and benefit of the residents and owners of property in Tall Timbers Section, instead of a *dedication* of the easement for street purposes. This court has earlier announced the rule that such a distinction between a "reservation" and a "dedication" in cases of this nature is purely nominal. See Lamar County v. Clements, 49 Tex. 347 (1878).

In conclusion, it is well to set out the statement of this court in Oswald v. Grenet, 22 Tex. 94 (1858), which has been reiterated again and again since its enunciation, as follows:

> "A dedication has been defined to be the act of devoting or giving property, for some proper object, and in such manner as to conclude the owner. Hunter v. Trustees, etc. 6 Hill, 407, 411. Thus, if one owning land, exhibit a map of it, on which a street is defined, though not as yet opened, and building lots be sold by him, with reference to a front or rear on that street, this operates as an immediate dedication of the street; and the purchasers of lots have a right to have the street thrown open forever. Wyman v. Mayor, etc. 11 Wend. 486; Livingston v. Mayor, etc. 8 id. 85; 1 Hill, N.Y. 189, 192. * * * the general doctrine is thus stated, upon the authority of numerous cases: 'If the owner of land lays out and establishes a town, and makes and exhibits a plan of the town, with various plots of spare ground, such as streets, alleys, quays, etc., and sells the lots, with clear reference to that plan, the purchasers of the lots acquire, as appurtenant to their lots, every easement, privilege, and advantage, which the plan represents as belonging to them, as part of the town, or to their owners as citizens of the town. And the right thus passing to the purchasers, is not the mere right

that the purchaser may use these streets, or other public places, according to their appropriate purposes, but a right vests in the purchasers, that all persons whatever, as their occasions may require or invite, may so use them; in other words, the sale and conveyance of lots in the town, and according to its plan, imply a grant or covenant to the purchasers, that the streets and other public places, indicated as such upon the plan, 'shall be forever open to the use of the public, free from all claim or interference of the proprietor, inconsistent with such use.' 2 Smith, Lead.Cas. 5th Am. ed. 208, 209; Rowan's Ex'rs v. Portland, 8 B.Mon. 232, 237; 3 id. 478, 481; 18 Ohio, 18; Spencer, 86, 106; 11 B.Mon. 163."

I see no basis for departing from the law in this area as announced by the courts of this state for the last 100 years.

The judgment of the Court of Civil Appeals should be affirmed.